DECEMBER TERM, 1886. 455

Matt et al. v. The Roman Catholic Mutual Protective Society.

MATT ET AL. v. THE ROMAN CATHOLIC MUTUAL PROTECTIVE SOCIETY.

1. **Life Insurance**: IN RELIGIOUS ASSOCIATION: FORFEITURE BY NEGLECT OF RELIGIOUS DUTIES: EVIDENCE. Before the courts will deny a widow and children the benefit of a life insurance fully paid for by the husband and father, on the ground that he forfeited the insurance by a failure to perform a mere religious duty required by the contract, they will scrutinize with considerable care the evidence of such forfeiture. And in this case, where the contract provides that if the insured *neglects his Easter duties* he thereby forfeits at once all his rights, the evidence of the failure to perform such duties is considered (see opinion) and *held* to be wholly insufficient to establish such failure and consequent forfeiture.

2. ———: FORFEITURE: WAIVER OF BY RETAINING ASSESSMENTS. A life insurance society cannot be held to have waived a forfeiture of the insurance by retaining assessments made and paid after the forfeiture, where there is no plea of such waiver, and no showing that there was an administrator of the insured appointed who was competent to receive payment of the assessments improperly made, or that the society retained them for an unreasonable time after learning of the facts constituting the forfeiture.

3. ———: INVALIDITY OF CONTRACT: ESTOPPEL. A certificate of life insurance cannot be treated as valid for the purposes of assessing the insured, and invalid for the purpose of avoiding payment to his beneficiaries.

*Appeal from Clayton Circuit Court.*

TUESDAY, DECEMBER 21.

ACTION upon a beneficiary certificate issued by the defendant company to one Franz Joseph Matt, now deceased. The plaintiff Theresa Matt is the surviving widow of Franz Joseph, and the other plaintiffs are his children. The certificate is in these words: "This certifies that Franz Joseph Matt, born December 26, 1832, is a member of the Roman Catholic Mutual Protective Society; having been received in due form by Local Branch No. 23, St. Clemens, at Guttenberg, Iowa, and is entitled to all the benefits of membership,

so long as he conforms with the rules and regulations prescribed by the charter, constitution and by-laws of the society. The society pays, at his death, two thousand dollars, when the society numbers two thousand members, but until that time it shall be one dollar for each and every member; but the society shall not be, in any case, liable for more than one dollar for each member in good standing."

By the constitution, payment was to be made to the person or persons designated in the application for membership. The deceased, in his application, designated his wife and children as beneficiaries, and the plaintiffs are the proper persons to receive the benefit, if the defendant is liable to pay the same. The defendant, however, contends that it is not liable. Its defense is based upon the alleged ground that the deceased had not, at the time of his death, complied, in all respects, with the constitution of the society. The provision of the constitution which it is alleged that the deceased violated in these words: "Any member of this society who becomes a member of any secret society, or *neglects his Easter duties*, thereby forfeits at once all his rights and interests in the society. In doubtful cases, the decision of the bishop of the diocese shall be final." The violation complained of is that the deceased neglected his Easter duties. The plaintiffs denied that he was guilty of such neglect, and the parties went to trial upon that issue. There was a trial to the court without a jury. Every fact necessary for a recovery was found by the court in favor of the plaintiffs, except in regard to the alleged neglect by the deceased of his Easter duties. Upon that point the court found against the plaintiffs, and dismissed their petition, and rendered judgment against them for costs. They appeal.

*James O. Crosby*, for appellants.

*S. H. Fairall* and *Murdock & Davidson*, for appellee.

ADAMS, CH. J.—The rule in respect to Easter duties is said

Matt et al. v. The Roman Catholic Mutual Protective Society.

to have been prescribed by the Fourth council of Lateran,
held at Lateran, in Europe, 1215, in canon 21,
reaffirmed by the Counsel of Trent, 1545, canon
8. The rule, as shown in evidence, provides
that "every one of the faithful, of both sexes,
after they come to the years of discretion, shall,
in private, faithfully confess all their sins, at least once a
year, to their own pastor, and take care to fulfill, to the best
of their power, the penance enjoined on them; receiving
reverently, at least at Easter, the sacrament of the eucharist,
unless, perhaps, by the counsel of their pastor, for some
reasonable cause, they judge it proper to abstain for a time.
Otherwise let them be excluded from the church while liv-
ing, and when they die be deprived of Christian burial."
The court found, in substance, that the observance of this
rule was incumbent upon the deceased as a condition of
membership in the defendant society; that the deceased, at
Easter, in the year 1882, being the year previous to his
death, violated the rule by neglecting to confess his sins as
provided, and receive the sacrament of the eucharist, and so
had forfeited his rights in the society.

    The case, as it is presented to us, is a very peculiar one.
The court below was asked to determine, as a fact, whether
the deceased confessed all his sins at Easter, in the year
1882, and to sustain the right of this defendant society to
withhold from this widow, and her children, in case the
deceased failed to so confess, a pecuniary benefit fully paid
for by him. We feel constrained to say that there appears
to us to be something unseemly in mixing pecuniary rights
with what should be looked upon as a purely religious duty.
Possibly, notwithstanding this, the society has a right to
stand upon its contract, and ask the courts to sustain it
according to its letter. But, if this be so, it is the duty of
the courts to scrutinize with considerable care the evidence
adduced in proof of the neglect. Courts do not take very
kindly to forfeitures under any circumstances, and this ought

*1. LIFE insur-ance: in re-ligious asso-ciation: for-feiture by neglect of religious duties: evi-dence.*

to be especially so where the ground of forfeiture is an alleged neglect which affects injuriously in no way any pecuniary right, liability or risk of the party setting up the neglect. What, then, is the evidence that the deceased did not confess all his sins at Easter, in the year 1882, and receive the sacrament of the eucharist?

If he had made any confession at all, and received the sacrament of the eucharist, we presume that no question would be raised as to whether he confessed them all or not. Probably the society would not deem it proper to go into an inquiry as to the specific sins of the deceased, for the purpose of ascertaining whether any remained unconfessed or not. While we think that the defendant would be liberal in this respect, it seems to ask us to presume that the deceased had, upon his conscience, in Easter, 1882, unpardoned sins to confess, and that, too, in the face of the elementary rule that the law never presumes a wrong. Of course, it is not claimed that a court can, in a general way, hold that there is a legal presumption that a given person did, during a given time, commit sins. The defendant's position is not very well defined in this respect; but we understand it to be that the defendant contracted as a Catholic, and that the contract is to be construed with reference to such fact, and that we are to take judicial notice of every fact necessary for the proper construction of it as a Catholic contract. For the purpose of the opinion, this may be conceded; but, after holding all presumptions in favor of the defendant which it can properly claim, or does claim, we have to say that it is not denied and cannot be, that the burden was upon the defendant to show that the deceased failed to make confession as required.

The defendant assumed this burden, and undertook to prove the failure by one Peschong, a Roman Catholic priest, who had charge of the Catholic congregation at Garnavillo from December, 1879, to October, 1883. He testified in these words: "I knew Franz J. Matt. He was a member of Garnavillo parish. As far as my knowledge is concerned, I

must state that said Matt neglected his Easter duties required by the church, in the year 1882. * * * I earnestly admonished him privately to go to his Easter duties, and I even did this a short time before his death. But he simply promised, and never kept or fulfilled his promise in this respect." He also testified, in substance, that the performance of Easter duties was so important that a neglect of the same could not escape the knowledge of the pastor; that at the time of Matt's death the witness demanded of the relatives proof that he had fulfilled his Easter duties, but that they could not make the proof, and that he refused him Christian burial; that the wife of the deceased sent word to the witness that her husband had gone to confession to one Father Majust, but that he (the witness) proved it to be untrue by some one who he believed was the daughter of the deceased; that the witness, by authority of the Rev. B. Coyle, pastor at Elkport at that time, always heard the German confessions, and that the Rev. Coyle remarked to him that he did not remember ever having seen the deceased go to his Easter duties.

This is the evidence relied upon by the defendant to sustain the issue upon its part that the deceased did not perform his Easter duties. In our opinion, the evidence wholly fails. In the first place, it does not appear that the deceased belonged to the Garnavillo parish during the whole or any part of Easter, 1882. Perhaps we ought to consider it as proven that he belonged to that parish at some time between December, 1879, and the time of his death, in the spring of 1883. But that is the most which the evidence shows in this respect. It appears from the evidence that he was a farmer, and that the Catholic church nearest to him was at Elkport. There was, it is true, some attempt to show that he did not perform Easter duties at Elkport. The Rev. Peschong, pastor at Garnavillo, heard the German confessions at Elkport, and did not hear the confession of the deceased. But there is not the slightest evidence that the deceased did not confess

in English to the pastor at Elkport. The statement by the witness Peschong that the Rev. Coyle remarked to him that he did not remember ever having seen the deceased go to his confessions was wholly inadmissible. It was only hearsay evidence. Besides, if it were conceded that the Rev. Coyle did not remember such fact, the evidence would not be sufficient. He was not bound to remember every one whom he saw going to confession, many of whom might have been strangers to him. Such important rights as these are not to be staked upon such a flimsy circumstance.

It is contended by the defendant that the deceased belonged to the Garnavillo parish during the whole of Easter, 1882, and could not have performed Easter duties except by confession to the pastor of that parish. We have attempted to show that it is not proven that the deceased belonged to the Garnavillo parish during the whole, or any part, of the time in question. But it would not follow, if he did, that he might not have confessed elsewhere. It is not shown that Catholics absent from home may not observe their religious duties wherever they may happen to be. If there is any church whose unity and catholicity are more complete, we are not aware of it. The rule, it is true, provides for confession to the penitent's pastor. But we think that we are justified in inferring, under the evidence, that, for the time, he is regarded as the penitent's pastor who anywhere in the world may properly receive his confession, and administer the sacrament of the eucharist. There is not an intimation in the evidence to the contrary, and it is affirmatively shown that the Garnavillo pastor heard German confessions of Elkport parishioners.

The plaintiffs contend that, even if it were true that the deceased neglected his Easter duties, the defendant waived the

2. ——: forfeiture: waiver of by retaining assessments. forfeiture by retention of the assessments collected after that time. If such waiver had been pleaded, and it had been shown that an administrator had been appointed, and was qualified to receive repay-

ment of assessments improperly collected, and that the defendant retained them for an unreasonable time after knowledge of the facts, as claimed by it, we are not prepared to say that such waiver should not be deemed to be established; but, in the present condition of the record, we are not able to say that it is.

One very grave question is urged upon our attention by the counsel for the appellee. It is insisted by it that the contract in question is one which the appellee had no power to make, and is therefore void. The court below found, as we understand, that the contract, in its inception, was valid. Under the circumstances of this case, we do not think that we ought to go into any inquiry upon this question. We can hardly think that the defendant desires to insist upon its position. If it is true, as claimed, that the certificates which it has issued, and which the holders have in good faith relied upon as a provision for their family in case of death, have no validity, and if the defendant has, since this defense has been set up, proceeded to make and collect assessments, thus falsely pretending to the certificate holders that the certificates are valid, while claiming in the courts of the state that they are not, proceedings in *quo warranto* should be instituted against the defendant at once. These certificates are not to be treated as valid for the purpose of collecting assessments, and invalid for the purpose of escaping liability, and we are not prepared to say that grave consequences should not follow the acts of all the persons who have participated in the commission of the great wrong.

We think that the judgment of the circuit court must be

REVERSED.

3. ——:
invalidity of
contract:
estoppel.