MINNIE WEYRICH, Appellant, v. THE GRAND LODGE, INDEPENDENT ORDER OF TRUE LEAGUE OF MISSOURI, Respondent.

St. Louis Court of Appeals, December 22, 1891.

1. **Benefits : LIABILITY OF GRAND LODGE.** Certain lodges formed for benevolent purposes organized a grand lodge, which was composed of their representatives and was incorporated. The laws of the order provided for the payment of a certain fund by the treasurer of the grand lodge to designated relatives of deceased members,

and expressly stated that all the lodges jointly bound themselves to pay the fund. The grand lodge made assessments against the subordinate lodges, which its treasurer collected from these lodges, and out of which he paid this fund to the persons entitled thereto ; but the grand lodge had nothing to do with the initiation, retention or expulsion of the members of these lodges, and kept no accounts with these members. *Held*, THOMPSON, J., *dissenting*, that the aforesaid provisions did not establish a promise on the part of the grand lodge, but only a joint promise by the subordinate lodges to pay this fund.

2. Corporation : ULTRA VIRES: ESTOPPEL. *Held*, *arguendo*, that a corporation, which has received the benefits accruing to it under a contract made by it, is, in the absence of a statute prohibiting it from exercising the powers thus assumed by it or a public policy working such prohibition, estopped from alleging that the contract is *ultra vires*, and that this is certainly the case, unless it restores to the other contracting party the benefits received by it, and especially when it receives these benefits with the knowledge of its want of a contracting power.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*Lubke & Muench*, for appellant.

*Rassieur & Schnurmacher*, for respondent.

ROMBAUER, P. J.—The plaintiff sues to recover a death benefit of $700, alleged to be due to her from the defendant. At the close of the plaintiff's evidence the trial court instructed the jury that she could not recover. This instruction, as her counsel now assert, was given because the trial court was of opinion that the contract sued upon was *ultra vires* of the defendant corporation, and whether it was so or not, and whether such a defense was available to the defendant under the pleadings, are the sole questions argued in the brief of plaintiff's counsel. On the other hand defendant's counsel contend that the instruction was properly given, because the plaintiff's evidence failed to disclose

any promise on defendant's part to pay to the plaintiff any sum whatever, and the brief filed by them deals exclusively with that question. If the defendant's view of the probative force of the evidence is correct, then the further question whether the defendant had or had not the legal power to make the alleged promise is immaterial. We must, therefore, first decide whether the defendant's contention is correct.

The plaintiff's evidence tended to show the following facts: She is the widow of Louis Weyrich, who in his lifetime was a member of the Humbold Lodge of the True League. Many years ago lodges of an organization for benevolent purposes were formed, known as the True League. They had a central organization known as a grand lodge, composed of representatives of the individual lodges. Prior to the time when the plaintiff's husband became a member of Humbold lodge, which was one of these individual lodges, the grand lodge became incorporated, its object of incorporation in the articles being stated in the following manner:

"The objects of the association shall consist in benevolence, charity, and mutual aid among its members, and shall be attained by the formation of a brotherhood."

The grand lodge caused a pamphlet to be issued which contained the following statements purporting to be part of its constitution:

"STATUTES OF DEATH FUND.

"*Purpose.*—The death fund was organized in order to aid the family of the deceased member in such manner that they should be enabled, if possible, to maintain themselves by a proper investment of the benefit sum. Only unquestionably just demands on the part of the lodges of this order, such as lodge moneys in the hands of the officers, moneys borrowed on time or

advances, and expenditures on funerals, shall be deducted from the benefit sum ; other creditors of the deceased and administrators of estates have no demand upon the same.

"Sec. 1. *Membership.* — All the lodges of the U. O. T. B. have jointly bound themselves, upon the death of a brother entitled thereto under the constitution and by-laws, to pay the sum of $700 to his heirs, provided he has not already, through the death of his wife, received the sum of $200 awarded in such cases ; in the latter case the family is only entitled to $500.

" Sec. 3. Every member is looked upon as a lawful member from the date of his admission.

"Sec. 5. *Payments of assessments.*—Dues must be paid to the grand treasurer upon acquittance by every lodge within fifty days after the date of demand by the grand secretary.

" Sec. 7. *Rights.*—The following designated heirs of a deceased brother are only entitled to the death benefits, if his lodge at the time of his decease was not, as in previous sections stated, in arrears in dues or in assessments, not excluded in consequence of a finding, and provided the brother himself at the time of his decease was entitled to assistance under the by-laws and books of his lodge.

" Sec. 8. Expulsion of a member from a subordinate lodge shall exclude him also from the death benefit fund.

" Sec. 9. *Heirship.*—Upon the death of a brother in a lodge of the True League Order, if the conditions contained in the preceding article have been fulfilled, and the sum fixed in the case of death of a wife has not been previously collected, the sum of $700 ( in latter case only the sum of $500 ) shall be paid to the following heirs : *First.* To his widow, provided they were living together in lawful wedlock, or if there be no widow, then, *secondly,* to his children in equal proportions.

"Sec. 10. *Payment and security.*—The grand treasurer is obliged to pay the benefit sum within sixty days to the heirs legally entitled thereto.

"Sec. 22. *Change of death benefit statutes.*—These statutes of the death benefit fund can only be changed in a regular session of the grand lodge of the state of Missouri, after a written motion to that effect shall have been made by five representatives in a previous meeting."

The pamphlet was delivered to the members of the individual lodges, when they became such, and the contributions made by such members to their lodges were presumably made on the faith of the statements therein contained. The plaintiff's husband became a member of Humbold lodge in or about the year 1884. The grand lodge had no account with the members of individual lodges. Upon the first death occurring in any one year it caused an assessment on all individual lodges to be made, based on the number of its members, and such assessments were remitted by each individual lodge to the grand treasurer upon demand of the grand secretary. Out of the moneys thus received, the grand treasurer paid death benefits until the money was exhausted, and then another similar assessment was made on all individual lodges. With the initiation, retention or expulsion of a member in and from the individual lodge, the grand lodge has nothing to do. That is a subject with which the individual lodges deal exclusively. The officers of the grand lodge only know the membership of individual lodges by reports made to them from time to time by officers of these lodges, and they based the assessment made on each lodge upon such reports.

The treasurer of the grand lodge refused to pay the amount of $700 claimed by the plaintiff, owing to the fact that, prior to the death of plaintiff's husband, it was officially reported to him that the plaintiff's husband had ceased to be a member of Humbold lodge

through his failure to pay some of the monthly dues. This is in substance all the evidence bearing on the question under consideration.

Believing that it was the object and aim of this association of lodges to secure to the widow of every one, who at the date of his death was a member of one of the lodges thus associated, the sum of $700 for investment, and believing further that the most convenient way of attaining that object would be to make the grand lodge primarily liable for that sum in case of death, we have carefully examined the entire record to ascertain whether any express promise on the part of the grand lodge to that effect could be gleaned therefrom. The only express promise contained anywhere is to be found in section 1, of the statutes of the death fund, which reads as follows :

" All the lodges of the U. O. T. B. have jointly bound themselves, upon the death of a brother entitled thereto under the constitution and by-laws, to pay the sum of $700 to his heirs, provided he has not already, through the death of his wife, received the sum of $200, awarded in such cases; in the latter case the family is only entitled to $500."

This is a promise of all the lodges ( each, as above seen, having a representative in the grand lodge ) to pay that amount jointly, and not a promise of the grand lodge as such. The language used is unambiguous, and there is no room for any other interpretation. We can only declare the contract which the parties have seen fit to make, and the fact that its enforcement when resisted may be inconvenient is a matter which is not for our consideration. Nor is there any other part of the laws concerning the death fund which would force us to give to the language used any other meaning than its terms import. The fact that the amount is to be paid by the grand treasurer direct to the beneficiary in no way militates against the position contended

for by the defendant, that the grand lodge and its officers were mere collecting and disbursing agents of the death fund for the associated lodges, and in no sense original promisors to pay any specified amount to any beneficiary upon an independent contract of their own.

The laws concerning the death fund promulgated by the corporation, if they are to be construed without the aid of extraneous evidence, must be construed as a whole. We cannot reject one part on the theory that it is a mere preamble, and retain the other on the theory that it is the gist of the promise, and moreover a promise made to the member of another organization. Where the treasurer of a corporation is ordered to pay a certain sum upon a certain contingency to a designated party, this may be equivalent, in absence of other evidence qualifying the direction, to an express promise on part of the corporation, provided it is supported by a sufficient consideration between the corporation and the promisee. But the record here discloses no such facts. The direction is qualified by the preceding clause. It does not appear that the plaintiff ever contributed anything to the corporation itself, or even entered into any contract relation with it; because, as above seen, he was neither a member of the corporation, nor had the corporation any control whatever over him. The organization of this corporation is unusual. All its contract relations are with the lodges, and not with the members, and, as far as the record discloses, it exercises no control whatever over the latter.

In almost every case, which has heretofore come before us, the suing member was a member of the corporation sued, and in almost every one of them he sued upon a written promise evidenced by a certificate issued to him directly by, and defining the liabilities of, the defendant corporation. As such is the usual, if not the universal, method adopted by these benefit societies in entering into contracts, and as the evidence shows

that even this corporation has since adopted that method, no complications can arise from the present decision, even if that fact, were entitled to any controlling weight.

Coming to the question of *ultra vires*, and waiving the point whether such defense should be made by special plea, it would seem that that question also has some bearing on the case. Under the charter offered in evidence, the contract, as claimed by the plaintiff, is not within the enumerated objects of the corporation. According to the better rule, a corporation, in the absence of a statute expressly prohibiting it from exercising certain power, or in the absence of a public policy working such prohibition, is estopped from asserting that the contract was beyond its powers, after it has received its benefits. It should certainly be thus estopped, unless it can and does restore to the other contracting party the benefits received, and especially so when such benefits were received with knowledge of its want of a contracting power. *Bradley v. Ballard*, 55 Ill. 413; *Matt v. Mut. Proc. Society*, 70 Iowa, 455; *Folmer's Appeal*, 87 Pa. St. 135; *Bloomington v. Blue*, 120 Ill. 121; *National Bank v. Matthews*, 98 U. S. 621.

In the case at bar, however, one of the mooted questions is, whether the defendant corporation as such did receive any benefits, and the answer thereto depends upon the question whether the defendant was a promisor or a mere distributing agent; hence, the value of the plaintiff's second argument depends upon the correctness of her first argument, or otherwise it is mere reasoning in a circle.

Whether the plaintiff has any remedy against the treasurer of the grand lodge by *mandamus*, provided he has sufficient funds in his hands for her payment, or against the secretary, provided there are no such funds, and provided her claim is in other respects valid; or whether she has a similar remedy against the grand

lodge, for failure to levy an assessment on the lodge for the purpose of putting the grand treasurer in funds for her payment, are entirely different propositions from the one herein discussed. In the present action, the plaintiff sued the defendant upon a direct promise, and, having failed to establish it, she must necessarily fail.

The judgment is affirmed. Judge BIGGS concurs. Judge Thompson dissents.

THOMPSON, J. ( *dissenting* ).—I do not see anything in the constitution and statutes of this order to warrant the conclusion, that it was intended to be at all different from other orders of the same kind, whose constitutions and statutes are constantly coming before us for interpretation, and against whose grand lodges actions for death benefits are constantly sustained. The record shows that the book from which quotations are made in the majority opinion is a body of statutes, so to speak, published by the grand lodge ( this defendant ), called "Laws of the death benefit fund." It is correctly assumed by my associates that it forms a part of the contract among the members of the order and between them and the grand lodge. By these statutes the grand lodge prescribes what the death benefit fund shall be ; and, indeed, a record of a meeting of the grand lodge was shown in evidence, at which the amount of the death benefit was established and settled. These statutes also provide to what persons the death benefit shall be payable in the event of the death of the member ; direct in what manner the fund shall be raised by assessments upon the subordinate lodges, very much as in other orders of this kind ; declare that expulsion of a member from a subordinate lodge shall exclude him from the death benefit fund ; require the grand treasurer to pay the death benefit within sixty days, and prohibit the changing of " these statutes," except at a regular session of the grand lodge, and in the manner therein prescribed,—not by the subordinate lodges.

The two most important sections of these statutes are as follows: "Sec. 9. *Heirship.*—Upon the death of a brother in the lodge of the True League Order, if the conditions contained in the preceding article have been fulfilled, and the sum fixed in the case of death of a wife has not been previously collected, the sum of $700 (in the latter case only the sum of $500) shall be paid to the following heirs: *First*, to his widow, provided they were living together in lawful wedlock, or if there be no widow, then, *secondly*, to his children in equal proportions.

"Sec. 10. *Payment and security.*—The grand treasurer is obliged to pay the benefit sum within sixty days to the heirs legally entitled thereto."

By section 9, above quoted, the grand lodge declares that the sum of $700 (or $500 in the contingency therein named) "shall be paid to the following heirs" (designating them). By section 10, it declares that its own grand treasurer is obliged to make this payment. Now, it is too clear, to my mind, for any reasoning that, when a corporation says its own treasurer is obliged to pay a certain demand, it means that the corporation itself is obliged to pay it. A corporation, from the nature of its constitution, can only act through its officers and agents; and when a corporation says that its financial officer shall make a payment I do not suppose that the corporation means he shall make it for himself, or that he shall make it for some one else; and I do not suppose that a judicial decision ever has been rendered, or ever will be rendered hereafter, in which such a declaration will be considered to be other than the promise of the corporation.

Nor does the fact that it is recited in the first section of these statutes that "all the lodges of the U. O. T. B. have jointly bound themselves, upon the death of a brother entitled thereto under the constitution and by-laws, to pay the sum of $700 to his heirs," etc., at all negative the conclusion that the grand lodge

binds itself to pay it. It is the mere recital of a histor-
ical fact—something in the nature of a preamble to
what follows. They have, of course, bound themselves
to raise this death benefit fund, in the manner elsewhere
stated in the same statutes, just as the subordinate
lodges in nearly all orders of this kind bind themselves.
But this does not prevent the grand lodge from also
binding itself; nor does it in the least imply, in the
face of the other language I have quoted, that the
grand lodge has not bound itself. In every order of
this kind, whose statutes have been before us, so far as
I can now recall, the subordinate lodges have under-
taken to raise the death benefit fund substantially in
the same way.

I admit that considerations of mere convenience do
not warrant a judge, in the interpretation of a written
instrument, to corrupt the text or to depart from it, or
to discover something in it which it does not contain.
But interpretation involves in every case a faithful
effort on the part of the judge to discover the real
meaning of the authors of the instrument; and before a
judge interprets an instrument so as to make it produce
unjust and impracticable results, he ought to be very
clear that no other road is left open to him, because he
cannot assume, unless the assumption is unavoidable,
that its authors intended such results. The interpreta-
tion put upon this instrument by my associates turns
it into a contract of life assurance which is no assurance,
but which, at the caprice of the officers of a grand
lodge, can be turned into a mockery, although the
deceased member may have paid his assessments for
years. Is it to be supposed, especially in the face of
the language I have quoted from these statutes, that
the authors of them intended that the beneficiaries,
should have no other remedy than an action against
thirty-one subordinate lodges? Is it to be supposed
that they intended that they should be remanded to a
proceeding by *mandamus* against the officers of the

grand lodge to compel them to make an assessment upon the subordinate lodges? Suppose that such a *mandamus* should go, and that an assessment should be made in obedience to it—by what process could the thirty-one subordinate lodges be ·compelled to pay their ratable proportions of it? Such a remedy would be found a delusive one, and it cannot justly be supposed that the authors of the statutes above quoted intended it.

In the other suggested ground of nonsuit—the defense of *ultra vires*—it is not in my opinion based on any tenable ground, or such as requires any discussion.

I have thus stated my reasons for dissenting from the opinion of my associates, because I regard the question decided as a very important one, not only to this order, but also to other orders of the same kind, whose schemes of insurance may, on the same lines of reasoning, be turned into a delusion. In my opinion the judgment of the circuit court should be reversed and the cause remanded.