OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1904.

*(Continued from Volume 187.)*

## CASS COUNTY et al. v. MERCANTILE TOWN MUTUAL INSURANCE COMPANY, Appellant.

**Division Two, March 30, 1905.**

1. **INSURANCE: Town Mutual Company: Reinsurance.** It is not necessary, in order to authorize one town mutual insurance company to reinsure property in another like company, that the latter company be a member of the former, or that the former own the property insured.

2. ———: ———: ———: **Member: Ultra Vires.** The statute authorizing the organization of a town mutual insurance company for the "sole purpose of insuring the property of its members" should not be so rigidly construed as to prohibit one company organized thereunder from making reinsurance upon property already insured by another like company organized under the

same law and doing business upon the same plan. The word "sole" is a word of limitation used in a restrictive sense, yet it is not to be understood as prohibiting one company from taking out insurance on the property of a member and another like company from issuing to that company a policy on the same property covering one-half the risk, and thus sharing the burden which the company first insuring the policy had assumed.

3. ——: ——: ——: **Ultra Vires: Estoppel.** Where the defendant town mutual insurance company has reinsured property insured by another like company, and thereby assumed a part of the risk, and that other company has fully performed its part of the contract of reinsurance, the defense that the reinsurance was *ultra vires* is not open to the defendant, there being no express provision in the statute prohibiting reinsurance.

4. ——: ——: ——: ——: ——: **When a Defense.** Where the contract is not expressly prohibited by law, the defense of *ultra vires* is not open to a corporation when the contract has been fully executed on the part of the other contracting party.

5. ——: **Reinsurance: Ultra Vires.** An insurance policy is not to be considered valid for the purpose of collecting assessments and invalid for the purpose of escaping liability. An insurance company cannot be allowed to keep premiums paid it on a policy of reinsurance, and escape liability to pay the policy on the plea of *ultra vires*.

6. ——: ——: **Extent of Liability.** Where a town mutual insurance company insured a house for $3,000, and reinsured it in the defendant company for $1,500, upon which the former company paid only $350, the performance of the contracts of insurance not being dependent on each other, the defendant's liability is not simply its pro rata share of the $350, but the loss being covered by both policies, suits could have been instituted at once upon both, unless the policies themselves otherwise provided.

7. ——: ——: **Assignment: Pleading.** Where it is alleged in the petition and not denied in the answer that the defendant company assumed a part of the risk of insurance issued by another like company and that that company, by order of its board of directors, assigned its policy of reinsurance by which defendant assumed said risk, to plaintiff, it will be held that the authority to make the assignment will be presumed, in the absence of evidence to the contrary.

8. **APPELLATE PRACTICE: Judgment for Right Party.** Where the judgment is for the right party and there is no error or defect in the proceedings which affects the substantial rights of appellant, the judgment on appeal will be affirmed.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves,* Judge.

AFFIRMED.

*Fyke, Yates & Fyke* for appellant.

(1) Defendant had no power to issue a policy of reinsurance, so-called, or to do any other act or thing than to mutually insure the property of its members, and to raise funds for the payment of losses sustained by its members, by assessment upon its members. Laws 1895, p. 200, secs. 1, 2, 3, 4. Both the companies were organized for the sole purpose of mutually insuring the property of their members, for the purpose of paying any losses incurred by any member thereof, by assessment, as provided by their constitution and by-laws. To enable one to become a member of the company, such person must be the owner of property capable of being insured, and must be such person as upon whom an assessment can be levied, for the purpose of paying losses of other members. The defendant company not only had no power, either expressed or implied, to issue the policy sued on, but was expressly prohibited from doing such business. R. S. 1889, sec. 5875. These companies are prohibited from engaging in any business other than the sole business of insuring the property of their members. The word "sole," used in the statute, is a restrictive word, a word of limitation. State ex rel. v. Perkins, 139 Mo. 115. (2) In case judgment should be rendered against defendant, its members could by no means be subject to an assessment for the payment of the judgment. Of course, the only assets it can have under the statute is such moneys as may be realized from assessment upon its members, and such assessment can only be legally made for the purpose of paying losses of its members. The contract sued on is, therefore, *ultra vires,* for the reason that

the defendant had no power to make it, and that the State Town Mutual had no power to enter into such contract, because it is expressly prohibited from transacting such business. Ins. Co. v. Barker, 28 Ins. L. J. 205; Keener v. Grand Lodge, 37 Mo. App. 543; Wagner v. Benefit Soc., 70 Mo. App. 161; Ferbrache v. Grand Lodge, 81 Mo. App. 268; Ben. Assn. v. Bunch, 109 Mo. 560; Lucas v. Trans. Co., 30 N. W. 771; 27 Am. and Eng. Ency. Law, 371; Miller v. Ins. Co., 97 Tenn. 167. A fire insurance company is not liable on a policy against damages by lightning, unless the damage happened by fire. Andrews v. Ins. Co., 37 Me. 257. (3) The clause in the policy sued on, "Loss, if any, payable pro rata at the same time and in the same manner as the reinsured company," has been construed by the Supreme Court of Illinois. Ins. Co. v. Ins. Co., 67 Ill. 362. Under that decision the defendant, if liable at all, is only liable for its pro rata share of the amount actually paid by the Nevada company. (4) The Nevada company had no power to assign the reinsurance contract so-called; at least none is shown. The person whose property is originally insured is not privy to the reinsurance contract; but the proceeds of the reinsurance contract, if valid, must insure to all the policy-holders in the reinsured company. Strong v. Ins. Co., 62 Mo. 289.

*C. W. Sloan* and *R. T. Railey* for respondents.

(1) Plaintiffs as assignees could sue defendant without showing prior payment by Nevada company. 1 May on Ins., sec. 11; Strong v. Ins. Co., 4 Mo. App. 27; Strong v. Ins. Co., 62 Mo. 289; Gantt v. Ins. Co., 68 Mo. 503. (2) Defendant received due notice and proofs of loss from Nevada company. It had notice of suit by plaintiffs against said Nevada company, and actively participated with the Nevada company, in defending said cause. It is therefore bound by the judgment ren-

dered therein.  Koontz v. Kaufman, 31 Mo. App. 410;
Wood v. Ensel, 63 Mo. 193; Landis v. Hamilton, 77 Mo.
565; Garrison v. Transfer Co., 90 Mo. 137; St. Joseph
v. Railroad, 116 Mo. 643; Dempsey v. Schawacker, 140
Mo. 689; Railroad v. News Co., 151 Mo. 390; 1 Herman
on Estoppel, sec. 157, p. 168; 1 May on Insurance, sec.
11; Ins. Co. v. Ins. Co., 17 Wend. 359.  The contract of
reinsurance was fully executed; was neither directly or
indirectly prohibited by defendant's charter nor the
law under which it was issued; was neither immoral,
illegal or contrary to public policy, but on the contrary
was along the same line of business in which defendant
was engaged, and necessary for the protection of both
companies in respect to risks which are too large for
either company alone to handle.  Having received and
held on to the premium collected of the Nevada com-
pany, defendant is estopped from insisting that said
contract of reinsurance is illegal or void.  Smith v.
Richardson, 77 Mo. App. 432; City of Goodland v. Bank,
74 Mo. App. 365; St. Louis v. Davidson, 102 Mo. 149;
Ins. Co. v. Railroad, 149 Mo. 178; Ins. Co. v. McClel-
land, 9 Colo. 11; State v. Ins. Co., 30 Kan. 585; Ins. Co.
v. Ins. Co., 17 Wend. 359; Watts v. Ins. Co., 82 N. W. 441;
C. O. N. G. & F. Co. v. C. C. D. Co., 53 N. E. 711; Rail-
road v. McDonald, 46 N. E. 1022; Wright v. Hughes,
21 N. E. 907; Lewis v. A. S. & L. A., 73 N. W. 799;
Bank v. Elevator Co., 51 N. W. 642; Arms Co. v.
Barlow, 63 N. Y. 70; Mayor v. Senneborn, 113 N. Y.
423; Buffalo v. Balcom, 134 N. W. 535; McDonald v.
Mayor, 68 N. Y. 23; Bank v. Dimrock, 24 N. J. Eq. 27;
Kennedy v. Bank, 101 Cal. 495; Davis v. Railroad, 131
Mass. 258; Railroad v. Proctor, 29 Vt. 93; 2 Dillon,
Mun. Corp. (4 Ed.), sec. 936; Bigelow on Estoppel
(5 Ed.), 685; Hendersonville v. Price, 96 N. C. 423;
Daniels v. Tearney, 102 U. S. 415; Ferguson v. Land-
ram, 5 Bush (Ky.) 230.  (3) It is claimed that defend-
ant is only liable for its pro-rata share of the $350,
paid by Nevada company.  This contention is clearly

untenable. Gantt v. Ins. Co., 68 Mo. 533; Blackstone v. Ins. Co., 56 N. Y. 104. (4) It is claimed that the Nevada company could not assign the policy sued on. Defendant admitted at the trial that policy sued on was on October 14, 1899, by an order of board of directors of Nevada company in due form assigned to plaintiffs. The policy belonged to the Nevada company and there is nothing in the case cited, nor in the statute, which prohibited it from assigning said policy. The right of assignment is not shown to be illegal, contrary to public policy, nor opposed to business principles. It was therefore valid. Gantt v. Ins. Co., 68 Mo. 503.

BURGESS, P. J.—The petition is in the usual form. Among the defenses set up in the answer is that the policy sued upon was *ultra vires* of the defendant company. The court made a special finding of facts as follows:

"In this cause the court doth find, from the evidence and admissions, the facts to be as follows:

"That defendant is a mutual fire insurance company organized under the laws of Missouri, Laws 1895, p. —; that the State Town Mutual Fire Insurance Company of Nevada, Missouri, is a similar company, organized and doing business by authority of the same legislative act; that on October 28, 1898, said last-mentioned company by its policy No. 4451, insured a certain brick store house for one William Dolan, in the town of Freeman, Cass county, Missouri, in the amount of $3,000, said policy running the period of one year; that prior thereto William Dolan and wife had executed to Cass county, one of the plaintiffs herein, a mortgage on said store building and lots to secure the payment of a note of $2,000 bearing interest at the rate of seven per cent per annum, which mortgage was duly recorded; that to this policy of insurance was a mortgage clause attached, making loss, if any, payable to said Cass county as its interest might appear; that on December 29, 1898,

the building described in said policy No. 4451, aforesaid, was totally destroyed by fire; that on the 27th day of March, 1899, said William Dolan and Cass county, as plaintiffs, instituted suits on said policy against the said company of Nevada, Missouri; that thereafter Charles W. Sloan was appointed receiver and later trustee of William Dolan, a bankrupt, by the United States district court, and by said court authorized to prosecute said case so instituted as above stated; that afterwards the venue of said cause was changed to the circuit court of Bates county, Missouri, where said cause was tried on July 3, 1899, said trial resulting in a judgment for plaintiffs in the sum of $3,045.55 on said policy No. 4451, and for costs; that from this judgment no appeal was taken; that on said judgment only the sum of $300 was ever paid by the Nevada company; that of the pendency of this suit the defendant in this cause was duly notified long before the trial thereof and the defendant herein advised with the defendant in that action as to proper matters of defense.

"The court further finds that the defendant herein on November 8, 1898, issued to said Nevada company its policy No. 4981 covering a period from November 8, 1898, to December 28, 1899, insuring said Nevada company against all direct loss by fire under its policy No. 4451 to an amount of $1,500, which policy No. 4981 is filed in this cause; that said policy No. 4981 was on the 14th day of October, 1899, duly assigned to the plaintiffs herein by the Nevada company; that after the burning of the store building of the said William Dolan on January 10, 1899, the general manager and adjuster of defendant met the agent and adjuster of the Nevada company at Freeman for the purpose of adjusting the loss, but after investigation the said manager and adjuster of this defendant advised the Nevada company to resist payment of said policy No. 4451, which was done with the result aforesaid; on January 28th this defendant received from the Nevada com-

pany the proofs of loss theretofore made to it by said Dolan, and upon the receipt thereof again advised the Nevada company to resist a payment of its policy No. 4451; that the Nevada company made no formal proof of loss under policy No. 4981, except as above stated, until March 9, 1899, but that the conduct of the two companies with reference to the matter was such as to show that any further proof of loss was waived, if in fact required under the policy and circumstances.

"The court further finds that after the trial of the cause first above mentioned in the Bates Circuit Court, the Nevada company notified defendant of the result, and requested defendant to notify it if an appeal was desired upon its part, but got no further response or word from defendant; that in said trial between the plaintiffs herein and the Nevada company as aforesaid, all of the issues, matters and things pleaded in the answer of the defendant herein, so far as liability of said Nevada company upon its policy No. 4451 is concerned, were fully pleaded in said former cause and were fully and finally adjudicated therein, and if said adjudication is binding upon this defendant, all such matters and things as herein pleaded by defendant herein, as defense to the claim of William Dolan under said policy No. 4451, have been fully and finally adjudicated.

"The court further finds that in the charter of defendant are found the following articles:

"1. The name assumed by this company and by which it shall be known is 'Mercantile Town Mutual Insurance Company, of Jackson, Missouri.'

"2. The principal office of this company shall be located in the city of Jackson, county of Cape Girardeau and State of Missouri.

"3. The specified kind of business this company proposes to transact is to make insurance on the mutual plan, against loss or damage by fire, lightning and windstorm on houses, buildings, merchandise, furniture and

all other kinds of property belonging to the members of this company.

"5.  The corporate powers of this company shall be exercised by the board of directors and such other officers and agents as shall be elected or appointed in the manner provided by the constitution and by-laws of this company.

"6.  All and every person or persons applying for and receiving a policy of insurance in this company shall be deemed and taken as members of this company for and during the life of their respective policies and no longer, shall be bound by all provisions, stipulations, conditions, statements and agreements contained in the articles of association, by-laws and the application for and policy of insurance of this company, all legal acts of the company and its officers and for the payment of their respective proportionate shares of all losses and expenses of this company. It is expressly provided, however, that no member or members of this company shall be personally or individually liable for losses or expenses, or any other indebtedness of this company to any amount exceeding the cash premium paid in and the amount of the premium note or notes executed by them respectively.

"10.  The board of directors of this company shall have the power to make an assessment as often as they may deem it necessary, upon the premium notes given by persons who are members of this company in order to settle the losses insured against and the expenses and other liabilities of the company without regard to what may have accumulated by reason of the cash payments. Such assessment shall be made on each and every note held by the company prior to the date of the assessment, and shall be for a sum upon each note which bears the same ratio to the whole amount to be raised by the assessment as the full amount for which all the notes assessed were given. The amount so assessed upon each note shall be due and payable

within thirty days after the notice of such assessment to the maker of such note has been deposited in the postoffice, postage prepaid, and addressed to the person at his address last known to the secretary of the company. If any person neglect or refuse to pay the sum assessed upon him for thirty days after the date of the mailing to him in said manner said notice, the directors of the company may sue for and recover the whole amount of his premium note held by the company with the cost of the suit. The party so in default shall lose all benefits and advantages of his insurance for and during the term of such default and non-payment, and, notwithstanding, shall be liable and obliged to pay all the assessments that may be made during the continuance of his policy, not exceeding, however, the amount of such notes in any case.''

The judgment is as follows:

''Now at this day come the parties aforesaid by their respective attorneys and this case having heretofore been submitted to the court, both parties waiving a jury on the pleadings and evidence of the parties and taken under advisement by the court, and at the time of said submission.

''Said plaintiff asked the court to make and state in writing a finding of facts, and after hearing the arguments of the attorneys and being fully advised in the premises, the court heretofore having filed in this court its finding of facts and all and singular the matters being seen and fully understood by the court, the court finds from the facts aforesaid the issues in favor of plaintiff and assesses the damages at the sum of $1,601.25. It is therefore considered, adjudged and decreed by this court that the plaintiffs have and recover of said defendant said sum of $1,601.25 aforesaid, and that they have execution therefor, as well as for all costs in this behalf laid out and expended, and defendant at the time excepted.''

The defendant appeals.

It is claimed for defendant that it had no power to issue a policy of reinsurance so-called, or to do any other act or thing than to mutually insure the property of its members, and to raise funds for the payment of losses sustained by its members, by assessment upon its members.

Said insurance company was organized under the act of the Legislature, approved March 21, 1895. [Laws 1895, p. 200.]

Section 1 of said act is as follows:

"That hereafter all town mutual fire and lightning and tornado, windstorm or cyclone insurance companies, organized for the sole purpose of mutually insuring the property of the members, and for the purpose of paying any loss incurred by any member thereof by assessment, as provided by their constitution and by-laws, are hereby exempt from the provisions of the insurance laws, as mentioned in chapter 89, of the Revised Statutes of Missouri, and nothing therein shall be so construed as to impair or in any way interfere with any of the rights of any such companies doing a mutual insurance business in the towns and cities of this State, as herein provided: Provided, that such companies shall do business only in the congressional districts in which they are organized, until they shall have $400,000 worth of property or more insured; then any such company may do business in any of the towns and cities of this State; and provided further, that any member of any such company may sue such company the same as if he was not a member thereof."

It is admitted that the State Town Mutual Insurance Company of Nevada, Missouri, and the defendant were organized under the same act, and it is contended by defendant that neither company could issue a policy to the other or receive or accept such a policy or one company become a member of the other; that both companies were organized for the sole purpose of mutually insuring the property of their members, for the pur-

pose of paying any losses incurred by any member thereof, by assessment, as provided by their constitution and by-laws.

The argument is that to enable one to become a member of the company, such person must be the owner of property capable of being insured, and must be such a person as upon whom an assessment can be levied for the purpose of paying losses of other members. There is no pretense that defendant was a member of the State Town Mutual Company of Nevada, or that it owned the insured property, nor do we think that either was necessary in order to authorize the defendant to reinsure the Dolan property. If it could have insured the property in the first instance we can see no good reason why it could not reinsure it, if in the line of its business, and if not prohibited by the act under which the companies were organized, or some other statute. Defendant contends that by the terms of the first section of the act the defendant company was organized for the "sole purpose of insuring the property of its members," but this language should not be so rigidly construed as to prohibit defendant from making reinsurance upon property insured by a company organized under the same law and doing business upon the same plan. It is true that the word "sole" as therein used is a restrictive word, a word of limitation. [State ex rel. v. Perkins, 139 Mo. 115.] Yet it is not to be understood in this case as prohibiting the Nevada Company from taking out and the defendant from issuing to it a policy on the same property covering one-half the risk, and thus share the burden which the Nevada Company had assumed. The premium paid by the Nevada Company answered the same purpose as if it had been paid by Dolan. How was the company to protect itself against too large a risk other than by reinsurance? It could not do so in any other way.

It was justified in this case upon the plainest business principles and was not in violation of any law.

Nor do we think the reinsurance was in violation of that part of section 5875, Revised Statutes 1889, which forbids such insurance companies from doing business on any other plan than that upon which it is organized, for the reason, that the reinsurance was made upon the same plan as the original insurance.

The evidence showed that it was the custom of these companies to issue policies of insurance for each other, each company paying for its reinsurance. It was shown by a former secretary of the Nevada company that while he was secretary of the company the Mercantile Insurance Company paid losses on policies of reinsurance to said State Town Mutual Insurance Company, one of which he mentioned, and that the Nevada company raised money to pay this loss by collecting fifty per cent of the premiums on policies in cash and by taking a note from the insured for the other fifty per cent; that losses were paid by order of the board, and from money collected upon premium notes executed by persons holding policies in said company. The evidence also showed that the defendant's adjuster, one Daugherty, was present, representing the defendant, to inspect loss of Dolan & Co. about January 10, 1899.

So that there seems to have been no difficulty in the way of raising money by these companies to pay losses on property which had been reinsured.

Defendant, however, claims that the contract of reinsurance is *ultra vires*, for the reason that defendant had no power to make it, and that the State Town Mutual had no power to enter into such contract, because it is expressly prohibited from transacting such business. But we are unable to agree to this contention for the reason, as we have said, there is no express provision in the statute prohibiting such companies from reinsuring property which has already been insured by the other. At most the prohibition is only by implication, and as the contract between the

companies was executed to the fullest extent on the part of the Nevada company, and the policy issued to it by defendant in consideration thereof, the defense of *ultra vires* is not open to defendant in this case. It is well settled in this State that the defense of *ultra vires* is not open tô a corporation when the contract has been fully executed on the part of the other contracting party, and it is not expressly prohibited by law. [Drug Co. v. Robinson, 81 Mo. 18; Dairy Co. v. Mooney, 41 Mo. App. 665; Welsh v. Brewing Co., 47 Mo. App. 608; Winscott v. Investment Co., 63 Mo. App. 367; Glass v. Brewing Co., 47 Mo. App. 641; Grohmann v. Brown, 68 Mo. App. 630; City of Goodland v. Bank, 74 Mo. App. 365.]

In Lysaght v. Association, 55 Mo. App. 1. c. 547, it is said: "The law is that, for acts merely in excess of charter authority, corporations can not set up the defense of *ultra vires,* when the consideration has been received and the transaction executed by the other party."

In the case of the City of Goodland v. Bank, supra, there is quoted with approval the following from Insurance Co. v. McClelland, 9 Colo. 11:

" 'The plea of *ultra vires* is not to be understood as an absolute and peremptory defense in all cases of excess of power without regard to other circumstances and conditions. . . . Where a certain act is prohibited by statute, its performance is to be held void because such is the legislative will. So where the consideration of a contract is by law illegal, as where the cause of action arises *ex turpe.* But where the act is not wrong *per se,* where the contract is for a lawful purpose in itself, as in the present case, and has been entered into with good faith, and fairly executed by the party who seeks to enforce it, we must assent to the doctrine of those authorities which hold that the excess of the corporate powers of the contracting party which has received the benefit of the contract is an unconscion-

able defense, which may not be set up to exempt from liability the party so pleading it.' And to the same effect are Town Co. v. Morris, 43 Kan. 282; Durham v. Mining Co., 22 Kan. 232; Association v. Martin, 39 Kan. 750; Kennedy v. Bank, 7 Neb. 59; White v. Bank, 39 Mass. 181; Allegheny City v. McClurkan, 14 Pa. St. 81; Dewey v. Railroad, 91 Mich. 351; Arms Co. v. Barlow, 63 N. Y. 69.''

Further on in the same opinion it is said:

''And it has been repeatedly decided by the appellate courts of this State that a violation of a charter can not be taken advantage of collaterally, or incidentally, but only on a direct proceeding instituted for that purpose. [Bank v. Bank, 10 Mo. 123; Ragan v. McElroy, 98 Mo. 349; Bank v. Porter, 52 Mo. App. 244; Society v. Branch, 120 Mo. 226; Bank v. Hunt, 7 Mo. App. 42.] It has been further declared by the same courts that in a collateral proceeding to declare the *ultra vires* acts of a trading corporation void it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain things, but in addition to declare that when it exceeds these restrictions the act should be void. If such intention does not exist in the charter, the State alone can question such acts as *ultra vires,* except when the contract is against public policy or good morals. [Drug Co. v. Robinson, 81 Mo. 18; Ins. Co. v. Smith, 117 Mo. 261; Welsh v. Brewing Co., 47 Mo. App. 608; Glass v. Brewing Co., 47 Mo. App. 639.] The contract under which the defendant became the owner of the stock in the defunct bank was in no sense *malum in se* or *malum prohibitum,* but it was unauthorized by its statutory charter. Now, since it was fully executed by the defunct bank, there is no rule of public policy to which our attention has been called that forbids the plaintiff, a creditor of the latter bank, from enforcing the statutory additional liability of the former by an action of this kind. It is made clear by the author-

ities to which we have adverted that in cases like the present, where a corporation has entered into a contract which was in excess of its charter authority and that contract has been executed by the other contracting party, an enlightened public policy requires that such contract be enforced rather than evaded.''

In passing upon *ultra vires* as a defense, the Supreme Court of Wisconsin said:

''It is well settled that a corporation can not avail itself of the defense of *ultra vires* when the contract in question has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance of the contract. . . . . And, in general, the plea of *ultra vires* will not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but, on the contrary, will accomplish a legal wrong.'' Citing authorities. [Lewis v. American S. & L. Ass'n, 98 Wis. l. c. 224.]

In speaking of life insurance certificates claimed to be invalid as *ultra vires,* the Supreme Court of Iowa said: ''These certificates are not to be treated as valid for the purposes of collecting assessments, and invalid for the purpose of escaping liability.'' [Matt v. Roman Catholic Mut. Protective Soc., 70 Iowa 455, 30 N. W. 799.]

The Supreme Court of Illinois said of an insurance contract: ''Where the contract has been fully performed by the party contracting with the corporation, and the corporation has received the benefits from such contract, it can not invoke the doctrine of *ultra vires* to defeat an action brought against it on such contract.'' [Benefit Association v. Blue, 120 Ill. l. c. 128.]

In the recent case of First National Bank of Kansas City v. Guardian Trust Company, 187 Mo. 494, it was said that the defense of *ultra vires* is never sustained out of regard for a defendant, but only where an imperative rule of public policy requires it. The question

of the defense of *ultra vires* was passed upon in that case, and the authorities bearing upon the subject extensively and ably reviewed by Judge Fox, and what we have said with respect thereto is in accord with and finds support in that decision.

There is no question of public policy invoked in this case, and it would operate as a fraud upon plaintiff not to compel defendant to pay the amount of the policy in question, and it should not be allowed to keep the premium paid, and escape liability upon the policy on the plea of *ultra vires*.

The point is made by defendant that it is only liable, in any event, for its pro-rata share of the $350 paid by the Nevada company. But the extent of the liability of defendant is not in any way contingent upon the amount paid by the Nevada company. The performance of their contracts did not depend upon each other, for the contracts were independent, and when a loss occurred which was covered by both policies, suits could be instituted at once upon both policies by the holder thereof, unless otherwise provided by the policies. [Gantt v. American Central Ins. Co., 68 Mo. 503, and authorities cited.]

It is alleged in the petition and not denied in the answer that on the 14th day of October, 1899, said State Town Mutual Fire Insurance Company of Nevada assigned in due form, by order of the board of directors of said company, the said policy number 4981, giving all rights of action thereon, for a sufficient and valuable consideration, to the plaintiff, yet defendant contends that no power was shown in the board to make the assignment. We are inclined to hold under the pleadings that the authority should be presumed in the absence of any evidence to the contrary.

Moreover, the judgment is for the right party, there is no error or defect in the proceedings which affects the substantial rights of the defendant, and we

are forbidden by statute (sec. 659, R. S. 1899) from reversing the judgment under such circumstances.

The judgment is affirmed.

All concur.