FIRST NATIONAL BANK OF TRENTON v. GILLILAN, *Appellant.*

72  77
53a 260

1.  **The Instructions** given by the circuit court upon the last trial of this case being in conformity with the ruling of this court when the case was here before, (63 Mo. 33,) the judgment is affirmed.

2.  **National Banks:** DEALINGS BEYOND THEIR CORPORATE POWERS. The maker of a non-negotiable note discounted with a National bank cannot question the right of the bank to recover on it, on the ground that National banks have no right to deal in that kind of paper.

*Appeal from Grundy Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*Shanklin, Low & McDougal* for appellant.

*W. P. Hall* and *C. A. Winslow* for respondent.

NAPTON, J.—This was an action on the following contract:

TRENTON, Mo., May 23rd, 1874.

Ninety days after date we promise to pay to the order of Robert L. Gillilan, $2,200 for value received, with interest after maturity at the rate of ten per cent per annum at the First National Bank of Trenton, Missouri, and if not paid at maturity, and the same is placed in the hands of an attorney for collection, we agree and promise to pay an additional sum of ten per cent as an attorney's fee.

ROBERT L. GILLILAN,
SAMUEL GAY,
NATHAN GILLILAN.

· This paper was indorsed by Robert L. Gillilan to the plaintiff. The defendant Nathan Gillilan denied the execution of this obligation, and asserted that his name was signed to said instrument by said Robert L. without any authority so to do. The cause was dismissed as to Gay, and the case was tried by a jury who found a verdict for

plaintiff for $2,326.22. The evidence was conflicting. The tendency of the plaintiff's evidence was to show an express authority in Robert L. to sign his father's name to such obligations. This was in truth the only issue in the case. The testimony of the bank officials, Bradley, Carnes and Moberly, proves, if not contradicted, that Nathan Gillilan on three different occasions repeated to these officers his wish that they should regard his son as authorized to sign, not only notes without the clause about attorney's fee, but also the latter form of instrument such as is involved in this suit, which latter form was adopted and uniformly used by the bank in July, 1873, and from that time forward. They testified that on three several occasions Nathan Gillilan was at the bank in person, that these discounts began in 1872 and ended in 1874, that during this period from eighteen to twenty-four notes were discounted, that Nathan signed several of such notes himself, upon which he obtained money for himself. It further appears from the testimony, beyond dispute, that Robert L. was a son of Nathan, but had a family of his own, and lived from two to four miles from his father, and that Samuel Gay was his nephew and also had a family and lived from four to six miles from Nathan. And it appears that Nathan had himself signed a note for $650, upon which the names of Gay and his sons Robert and George were also appended. On the contrary, Nathan Gillilan denied that he had ever noticed the change in the form of the notes taken by the bank, that he ever told any of the bank officers that Robert L. was authorized to sign his name; and testified that he told them he and his son Robert considered themselves good, that he was getting old and could'nt indorse any man's paper, that he never had but one note in plaintiff's bank and that was the note for $1,650, and its renewals, which he afterward paid off. Gay also testified for defendant, that he borrowed on the note now in suit $800, and gave his note for it, and Robert L. borrowed the other $1,400, that he found his note canceled and the one note

for $2,200 substituted. In rebuttal, Carnes, the cashier, stated that Gay's testimony was untrue, that he knew nothing of Gay's getting $800, and Robert L. $1,400.

The court gave the following instructions for the plaintiff: 1. If the jury believe from the evidence that Robert L. Gillilan signed his own name and that of Nathan Gillilan to the instrument in suit, they must find for the plaintiff against both the defendants; provided they further find that the name of said Nathan was so signed by his authority or direction, or with his consent.

2. If the jury believe from the evidence that defendant, Nathan Gillilan, authorized Robert L. Gillilan to get money from plaintiff and sign or use his name to the instrument sued on therefor, and that said Robert did, in pursuance of such authority, borrow of plaintiff $2,114.75, and to secure the payment thereof did make the instrument sued on, signing the said Nathan's name thereto as a maker of said instrument, then they must find for the plaintiff $2,114.75 as against both the defendants, and an attorney's fee of ten per cent of that amount added thereto.

To the giving of said instructions the defendant, Nathan Gillilan, objected. The court overruled said objection and defendant excepted.

The court also gave the following instructions for defendant: 1. Notice of the form of the contract used at plaintiff's bank received after authority had been given by Nathan to Robert L. Gillilan to sign his name at plaintiff's bank, if such authority was given, cannot avail plaintiff. The burden of proof is upon the plaintiff to show that Nathan Gillilan had full knowledge of the form of the contract in general use by plaintiff at the time such authority to sign his name was given, if it was given.

2. In making up their verdict the jury will reject all evidence in regard to notes executed to parties other than the plaintiff.

3. Unless the jury find from the evidence that Robert L. Gillilan, at the time of the execution of the con-

tract in suit, had authority to sign Nathan's name to such an instrument, they cannot find for plaintiff, even though said Nathan may have promised to pay other instruments to which his name had been signed by said Robert L.

The court refused the following instructions offered by defendant, and defendant excepted: 4. General authority to sign his name to an instrument for money borrowed of plaintiff would not authorize Robert L. Gillilan to sign Nathan Gillilan's name to the contract in suit.

5. Under the pleadings and the evidence, the jury must find for the defendant, Nathan Gillilan.

6. The evidence alone that notices of the maturity of notes in evidence were mailed to defendant, Nathan Gillilan, is not sufficient to raise the presumption that he received them.

7. Although the jury may find from the evidence that defendant, Nathan Gillilan, gave Robert L. Gillilan authority to use his (Nathan's) name in borrowing money of the plaintiff, yet such authority would not authorize Robert L. to sign Nathan's name to the contract in suit. The burder of proof is upon the plaintiff to show that said Nathan Gillilan expressly authorized said Robert L. Gillilan to sign his name to the contract in suit, or that he authorized him to borrow money and sign his name to a promise to pay the same, with full knowledge of the form of the contract in use by plaintiff at the time, and the fact, if it is a fact, that said Nathan himself signed two contracts for money borrowed by him at plaintiff's bank, similar in form to the contract in suit, is not of itself sufficient to show that he had knowledge of the fact that contracts of that form were generally in use by plaintiff's bank.

8. Although the jury may believe from the evidence that Nathan Gillilan gave Robert L. Gillilan authority to sign his (Nathan's) name when necessary in procuring money at plaintiff's bank, yet such authority is not sufficient to authorize Robert L. Gillilan to sign the name of Nathan Gillilan to the instrument here sued on, and unless

the jury find from the evidence that Robert L. had authority to sign the name of Nathan to an instrument of writing of the nature and character of this instrument here sued on, they ought to find for the defendant, Nathan Gillilan.

9. Although the jury may believe from the evidence that Nathan Gillilan authorized Robert L. Gillilan to sign his name to a note or notes, yet unless they further find from the evidence that said Nathan Gillilan authorized said Robert L. to sign his name to the contract in suit with Samuel Gay, they must find for said Nathan Gillilan.

10. There is no evidence to show that Nathan Gillilan authorized Robert L. Gillilan to sign his name to a note as joint maker with Samuel Gay.

Since the alteration of the phraseology of the instructions, in accordance with the opinion of this court in 63 Mo. 33, no questions of law are presented, and the issue in this case is obviously one of fact, and if properly expounded to the jury in the instructions, there is no ground for interference, unless in a total absence of evidence to support the finding. The instructions on each side given by the court explain clearly to the jury the only two questions of fact submitted to them, and the instructions refused on the part of the defendant are mere abstractions or repetitions of what had already been said, and only calculated to confuse and mislead. Nothing is better calculated to mislead a jury than a multitude of instructions when a few will answer all the purposes.

There were but two points of fact upon which a diversity of testimony required a finding. One was, whether Nathan Gillilan was apprised of the change in the form of the notes taken by the bank, when he authorized his name to be signed by Robert L., and whether this authority extended to instruments such as is now sued on; and the second was whether the restrictions upon this power stated by some of the witnesses, would exclude Gay as not a member of his family. In regard to this last point, the

6—72

evidence in the case now is very conclusive, although in all events, it was a question for the jury.   It now appears that if the word " family " is understood to mean members of his household, then neither Robert L., his son, or Samuel Gay, his nephew, belonged to his family.   His son Robert had a family of his own, and lived from two to four miles from his father.   His sister's son, Gay, also had a family and lived from four to six miles from Nathan.  But he practically explains his meaning by his acts in going on notes repeatedly in which Gay was also bound.  The other point as to Nathan's knowledge of the change in the form of the notes or contracts, upon which money was loaned after July, 1873, was also a question of fact upon which there was abundant evidence against the defendant, and the only contradiction of it came from the defendants themselves. It was a question of veracity purely for the jury.

In regard to the point that dealings in this kind of paper are beyond the power of National banks, the case of *National Bank v. Matthews*, 98 U. S. 621, is certainly conclusive that no such question could be raised in this case. The judgment is affirmed.   Judges HOUGH, NORTON and HENRY concur.

SHERWOOD, C. J.—I discover no special difference between this case as now presented, from what it was when here before.

In another case between the same parties, submitted at the same time with the foregoing NAPTON, J., said:  The only difference between this case and one in which an opinion is filed is, that Samuel Gay's name was not signed to the instrument here in suit, and the amount of the note is $1,558, payable ninety days after date.   Of course there was no question in the case, which was discussed in the other, concerning the joining of Gay, as not a member of the family.   In other respects the pleadings and evidence, and instructions given and refused are essentially the same, and the two cases were submitted together.   In accordance, therefore, with the opinion in the suit for $2,200, the judgment will be affirmed.   Judges HOUGH, NORTON and HENRY concur.