## L. H. Parsons, Respondent, v. The Guarantee Investment Company, Appellant.

St. Louis Court of Appeals, December 10, 1895.

Agency: RATIFICATION. The execution of a note on behalf of a corporation by one of its officers, though it is done contrary to the provisions of the corporate by-laws, will bind the corporation, if the latter has ratified it, or has accepted and retains the consideration given for it.

*Appeal from St. Louis City Circuit Court.*—Hon. James E. Withrow, Judge.

Affirmed.

*Lyne S. Metcalf* for appellant.

Neither the president nor the managing officer of a corporation has, by virtue of his office merely or in the absence of authorization by charter or by the board of directors, power to borrow money in the name of the corporation and give its notes or pledge its responsibility therefor. 4 Thompson on Corporations, pp. 3485, 3637; *Hyde v. Larkin*, 35 Mo. App. 365; *McCullough v. Moss*, 5 Denio, 567; *State v. Heckart*, 49 Mo. App. 285. Persons contracting with a corporation through an officer thereof are affected by limitations imposed by the by-laws upon the latter's authority or by by-laws requiring the execution of notes in a certain manner, of which by-laws such person may have had no actual notice, in cases where the act performed is not within the ordinary and proper business of the corporation, and one which the corporation had not customarily or knowingly allowed the officer to perform and where the

corporation, not having realized or accepted the benefit or fruit of the transaction, is not estopped from denying its ratification. *Rathburn v. Snow*, 123 N. Y. 343; *Patterson v. Robinson*, 116 N. Y. 193; *Jennison v. Bank*, 122 N. Y. 135; *Wilson v. Railroad*, 114 N. Y. 492; *Bohm v. Brewery*, 9 N. Y. Supp. 514; *Hyde v. Larkin*, 35 Mo. App. 365; *Sparks v. Dispatch Trans. Co.*, 104 Mo. 531; 4 Thompson on Corporations, p. 3469; *Grant v. Treadwell Co.*, 31 N. Y. Supp. 702; *Foster v. Ohio, etc., Min. Co.*, 17 Fed. Rep. 130; *First National Bank v. Hogan*, 47 Mo. 472; 17 Am. & Eng. Encyclopedia of Law, p. 145.

*Geo. D. Reynolds* and *Chas. W. Holtcamp* for respondent.

It is a settled principle of law as well as justice that when an agent does any act for the use of his principal, and the principal enjoys the benefits and fruits of the act, it is too late afterward for him to say the act was not by his authority. *Ruggles v. Washington Co.*, 3 Mo. 497; *Watson v. Bigelow*, 47 Mo. 413; *Carson v. Cummings*, 69 Mo. 331. Rules and regulations defining the powers and duties of the various officers through whose agency the corporate powers and franchises are exercised, found only upon the minutes of the directors' proceedings or other private records of the corporation, will not charge persons dealing with such officers, with notice of their authority. 17 Am. & Eng. Encyclopedia of Law, p. 143; *Lee v. Pittsb. Coal & M. Co.*, 56 How. Pr. 373. So, persons dealing with agents of a corporation are not bound by the specifically incorporated powers of the officers of such corporations as expressed in its by-laws. 17 Am. & Eng. Encyclopedia of Law, p. 143; *Smith v. Smith*, 62 Ill. 497; *Mechanics', etc., Bank v. Smith*, 19 Johns. 115; *Ins. Co.*

*v. White*, 106 Ill. 67; *Rathburn v. Snow*, 25 N. E. Rep. 379. It is well settled that when, in the usual course of business of corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. The principal is held responsible for the acts of his agent within the apparent authority conferred on the agent. *Sparks v. Dispatch Transf. Co.*, 104 Mo. 540; *First Nat. Bank v. North Missouri, etc., Co.*, 86 Mo. 125; *Martin v. Webb*, 110 U. S. 7; *Kiley v. Forsee*, 57 Mo. 390.

BOND, J.—Plaintiff filed as his cause of action in a justice's court the following note:

"CHICAGO, Oct. 10, 1893.

"$200.00.

"Ninety days after date we promise to pay to the order of L. H. Parsons two hundred dollars, at 211 Adams Express Building, Chicago, Ills., value received, 7 per cent from date.

"THE GUARANTEE INVESTMENT CO.,

"By GEO. M. MACDONALD,

"Prest. & Gen'l Mgr."

The execution of the note was denied under oath. There was a trial before the justice, judgment for plaintiff and an appeal to the circuit court, where a trial *de novo* was had before the court, a jury being waived, and a judgment rendered for plaintiff. No declarations of law were asked or given. Defendant appeals and asks for a reversal of the judgment, because the signature of the name of the defendant corporation to the note in suit by its president was unauthorized by its by-laws.

For the purpose of disposing of this point, we will discuss the case as if the by-laws (which were excluded)

had been received in evidence. Conceding that a note executed in the name of a corporation by its president, contrary to the provisions of its by-laws, is *prima facie* unenforcible, still it is not conclusively so, and if it further appears that the corporation with knowledge of the act has ratified it, or has accepted the consideration of the note, it will be as much bound as if the note had been originally executed in exact conformity with the provisions of its by-laws. *Washington Savings Bank v. Butchers and Drovers' Bank*, 107 Mo. *loc. cit.* 145; *First National Bank of Spingfield v. Fricke*, 75 Mo. 178; *Sparks v. The Dispatch Transfer Company*, 104 Mo. 531; Morawetz on Private Corporations, sec. 629; *Welsh v. Brewing Company*, 47 Mo. App. 613.

In the present case the undisputed evidence shows that plaintiff held a bond issued by defendant for $1,000, which was about to mature; that one Mac-Donald, the assistant general manager of defendant, represented to plaintiff that his corporation needed the money which it held for the payment of the bond belonging to plaintiff and the bonds of other parties living near him, in order to make up a fund of $100,000, required by law to be deposited with the state treasurer, to authorize the conduct of defendant's business in this state. He, therefore, offered to give in exchange for said bond two certificates of the corporation, duly executed by it, for $500 each, evidencing an agreement of the corporation to issue its preferred stock for the amount of such certificates in ninety days, or to pay the $1,000 with seven per cent interest. Plaintiff and other holders of the maturing bonds of defendant accepted these terms. Plaintiff assigned and delivered over his bond to a party suggested by defendant's assistant general manager, and received two certificates for $500 each. This assignment of plaintiff's bond was made on July 6, 1892. In September, 1893,

plaintiff drew upon the defendant corporation for the amount of one of the certificates given him in exchange for said bond. This draft was paid by the corporation. In October, 1893, plaintiff having declined a proposition to receive the note of the corporation in exchange for his remaining certificate, surrendered it to the defendant for the check of defendant for $300, and its note for $200, both signed in defendant's name by said MacDonald, who had then become the president of the defendant corporation. This check was paid by the defendant. The evidence tended to show that the party to whom the plaintiff originally delivered his bond for $1,000 subsequently indorsed the same to one Adams, the cashier of the defendant corporation, who received the amount due thereon.

The fair effect of this evidence is to show that the defendant corporation held out the said MacDonald as fully authorized to bargain on its behalf for obtaining its bond for $1,000 held by plaintiff. To effect this trade defendant provided said MacDonald with its formal certificates, regularly signed and executed in blank under its corporate seal, of the tenor above stated. By using these, MacDonald secured the delivery (and, as he stated, for the benefit of defendant) of a valid obligation against defendant for $1,000, held by plaintiff. He practiced the same methods in securing the maturing bonds of other holders. With full knowledge that its certificates had been thus used, the defendant never questioned the propriety of the transaction nor the validity of such certificates. On the contrary it paid the first one held by plaintiff in cash, and, when the proffer of its note for the last was refused, it settled by giving the plaintiff its check for $300 and its note for the remaining $200, each instrument made in its name by MacDonald as its president. Clearly the payments on the certificates were a ratifica-

tion by defendant of the contract whereby plaintiff held them, and when it is remembered that defendant got the last of these certificates, and still holds it, by a partial payment and the giving of the note in suit, it will be seen that a clear case of estoppel to deny the authority of the president to sign the note is created against defendant, who is enjoying the consideration of the note by retaining possession of the certificate which plaintiff parted with for said note. The trial judge was fully warranted in drawing the foregoing conclusions from the evidence.

Appellant claims that the statement of MacDonald to plaintiff, that he wanted the original bond assigned to a third party, should have put the plaintiff upon inquiry as to MacDonald's authority to act for the corporation. The effect, if any, of this statement in imparting notice to plaintiff is not reviewable by us, since no declarations of law were asked or given in the case. The judgment, therefore, in this case is for the right party, and must be affirmed. All the judges concur.