WILLIAM H. OSMER, Respondent, v. LeMAY-WEG-MANN BROKERAGE COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted January 9, 1911. Opinion Filed January 24, 1911.

1. CORPORATIONS: Contracts: Ultra Vires. The defense of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong; and a contract made by a corporation which is merely in excess of its power, but which is not expressly forbidden either by its charter or by law, and which has been fully performed by the other party and the consideration for it received by the corporation, is binding on the corporation by estoppel, and cannot be avoided by it as *ultra vires*, without a return of the consideration received.

2. ————: Manufacturing and Business Company: Contracts: Ultra Vires: Facts Stated. Where a corporation, organized for the purpose of "buying, selling and handling all kinds of groceries, teas, coffees, canned goods, dried fruits, candies and all and singular the merchandise usually traded in by brokers selling to the grocer trade," entered into a written agreement with an individual to lease and acquire certain patents owned by him which granted to him the sole and exclusive right to manufacture and sell patent washboards throughout the United States, in consideration of certain promissory notes executed by the corporation, and after the corporation had paid a certain number of said notes, by a supplemental agreement entered into between it and the patentee, it was agreed that, in consideration of the promise of the corporation to pay on the 15th of each month ten cents for each dozen washboards manufactured and sold by it during the preceding month, the time of payment of the unpaid notes was extended to a certain date, and one of such other notes was not paid on such extended

Osmer v. Brokerage Co.

date, in an action brought thereon by the payee, *held* that the defense of *ultra vires* made by the corporation possessed no merit, since to uphold it would permit the defendant to escape liability on a contract, the benefits of which it had enjoyed and retained.

3. ————: **Ownership of Stock: Presumptive Evidence.** Where a person is once shown to be the owner of corporate stock, and nothing to the contrary appears, the presumption is, that such ownership continues to exist.

4. ————: **Officers: Powers: Execution of Notes.** Where three stockholders owned the entire capital stock of a corporation, and, as its officers and directors, managed its business, and one of them, who was president, with the knowledge of the others, entered into a contract on behalf of the corporation, giving notes signed for the corporation by himself, and another of such persons, as treasurer of the corporation, procured an extension of time under a changed agreement, the notes and contract could not be repudiated on the ground that the board of directors had not authorized them.

5. **SALES: Conditional Sale: Rights of Vendee: Corporations.** Where the possession of certain patent rights and tools was given to a corporation under an agreement providing that, in consideration of twenty-four notes of the corporation, the entire interest and title in the patent right should be assigned to it, but in case of nonpayment the title would revert to the seller, the right of the corporation to become the absolute owner of the patents and tools became absolute upon its compliance with the terms of the contract, and the seller could not divest it of this right, and the corporation could transfer it by sale or mortgage.

6. ————: **Manufacturing and Business Company: Ultra Vires: Selling Washboards.** The right to sell washboards is within the corporate powers of a corporation organized for the purpose of "buying, selling and handling all kinds of groceries, teas, coffees, canned goods, dried fruits, candies and all and singular the merchandise usually traded in by brokers selling to the grocer trade."

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

*George Safford* for appellant.

(1)   It is a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the object of the grant.   Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public.   Fanning v. Gregorie, 16 How. (U. S.) 534; Minturn v. LaRue, 23 How (U. S.) 435; Carroll v. Campbell, 108 Mo. 1. c. 559; State ex rel. v. Murphy, 130 Mo. 1. c. 24.   (2)   An ultra vires contract cannot be validated by being partly performed.   Kansas City v. O'Connor, 82 Mo. App. 655; Shoe Co. v. Stores Co., 132 Mo. App. 517. (3)   A contract beyond the scope of the powers conferred upon the corporation, cannot, by any partial performance, become the foundation of any right. Thomas v. Railroad, 101 U. S. 71; Oregon R. & N. Co. v. Railroad, 130 U. S. 1; Transportation Co. v. Pullman, 139 U. S. 24; Railroad v. Railroad, 118 U. S. 290; Railway Co. v. Bridge Co., 131 U. S. 371; Press v. Press, 70 Miss. 669; Marble v. Harvey, 92 Tenn. 115; Trunk Co. v. Miller, 33 N. J. 155; Dairy Co. v. Mooney, 41 Mo. App. 665; Mallory v. Oil Works, 86 Tenn. 598. (4)   It is undoubted that the parties may stipulate that payment shall be a condition precedent to the transfer of title and where such a stipulation exists, no title vests in the buyer until he has performed the condition, although complete delivery may have been made. 24 Am. and Eng. Ency of Law, p. 1054, note 2, and cases cited; Whitney v. Eaton, 15 Gray (Mass.) 226; Tiedeman on Sales, sec. 85; Benj. on Sales, (4 Am. Ed.) Secs. 388-391; 35 Cyc., p. 323, sec. b.

*Ernest C. Dodge* for respondent.

(1)   The question of ultra vires can only be raised in a direct proceeding by the State.   Drug Co. v. Robinson, 81 Mo. 18; Miners Ditch Co. v. Zellerbach, 37 Cal. 543-570.   (2)   The defense of ultra vires should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary, would accomplish a legal wrong.   (3)   A corporation receiving the benefits of a business transaction with knowledge of how they came, adopts the transaction, and the corporation will be estopped to deny its power to do business when asked to pay the obligations incurred in prosecuting the venture.   Kansas City Star Pub. Co. v. Warehouse Co., 123 Mo. App. 13; Devers v. Howard, 88 Mo. App. 253; Cass County v. Insurance Co., 188 Mo. 1; Russell v. Cassidy, 108 App. 580; Bank v. Gilfillin, 72 Mo. 77; Segmore v. Carr Ass'n, 144 N. Y. 333; Ellett v. Stores Co., 132 App. 513; Dairy Co. v. Mooney, 41 Mo. App. 666; Smith v. Richardson, 77 Mo. App. 422.   (4)   A state of facts once shown to exist will be presumed to continue until the contrary is shown. Bank v. Trust Co., 187 Mo. 494.   (5)   As long as the acts of buying a business and the patent rights to manufacture washboards was not  contrary to existing law and were not expressly prohibited by the charter of the company, the mere excess of power exercised by its officers is binding on the company.   St. Louis & Davidson, 102 Mo. 149; Water Co. v. Aurora, 129 Mo. 540.   (6) This conditional sale could become absolute by the vendee paying the notes, and the vendor could then be compelled to transfer title, whether he would or not.   Currier v. Knapp, 117 Mass. 324; 5 Thompson on Corporations, sec. 5999.

REYNOLDS, P. J.—The appellant, LeMay-Wegmann Brokerage Company, was incorporated under article 9, chapter 12, of the Revised Statutes of 1899,

relating to the incorporation of manufacturing and business companies, the certificate of incorporation issued by the Secretary of State bearing date 28th of March, 1906. It was capitalized at $25,000, the stock divided into shares, of the par value of $100 each. The incorporators and first board of directors named were George Wegmann, owner of fifty shares, Louis J. LeMay, 130 shares, and Henry Wegmann, Jr. seventy shares, it being stated that all of the capital stock had been subscribed by these parties and sixty per cent thereof actually paid in. The object and purpose of the corporation it stated to be "to buy, sell and handle all kinds of groceries, teas, coffees, canned goods, dried fruits, candies and all and singular the merchandise usually traded in by brokers selling to the grocer trade." On the 22d of March, 1907, a written agreement was entered into wherein it is recited that plaintiff (party of the first part), is the owner of certain patents covering improved washboards, and that defendant (party of the second part), is desirous of acquiring the sole and exclusive right to manufacture and sell the patented articles and also the privilege of purchasing the letters patent, with any other inventions appertaining to them which the party of the first part may develop and patent. It thereupon recites "the party of the first part tenders, transfers and leases to the party of the second part, subject, however, to the conditions and stipulations hereinafter named and set forth and made part of this agreement, the sole and exclusive control of all the letters patent aforesaid, as the same may appertain to the sole and exclusive right to manufacture and sell the said patent washboards throughout the United States, and the territories thereof, granting to him (it) the same benefits, immunities and privileges, as would have accrued to the party of the first part, under like conditions, had this transfer and lease not have been made." Following this, the agreement provides: "In consideration of the premises herein set forth and the benefits to

be derived by this transfer and lease, party of the second part has this day given to the party of the first part, their (its) twenty-four promissory notes, serially numbered from one to twenty-four, inclusive, each due and payable in numerical rotation as follows:" Proceeding, the agreement describes the notes and continues, that it is further stipulated that upon default in payment or failure to pay any of the notes for a period of two days after they have become due and payable, then and in that event all the rights under the contract conferred on the party of the second part shall terminate at once and revert to the party of the first part and the party of the second part agrees to forfeit and surrender to the party of the first part any and all claims for money paid or of any character whatever in connection with this lease, the rights in which shall immediately revert to the party of the first part. It is then provided that upon the payment of each of the promissory notes as they become due and payable the party of the first part binds himself, his heirs etc., upon payment of the last or final note, the preceding notes having been paid, to assign to the party of the second part all his right, title and interest in and to the letters patent before referred to, by the assignment vesting in the party of the second part the sole and exclusive ownership thereof and all rights thereunder. It is further set out that the party of the first part loans and tenders the use of certain described tools to the party of the second part for a period of 34 months from date of the agreement, unless the agreement terminates before that time, in which case the tools, etc., are to be immediately returnable, the party of the second part agreeing to take care of these tools and keep them insured in the amount of $269, while the tools are committed to it, and that upon the payment of the 24 notes, the party of the first part agrees, by bill of sale, to transfer all these tools to the party of the second part. The party of the first part finally agrees to lease and sell to the party of the

second part and including the same in conditions of lease and agreement, any and all patents in relation to washboards that he may hereafter obtain. This agreement was signed by the plaintiff Osmer and in the name of the defendant corporation by Louis J. LeMay as its president. On the same date of this agreement the 24 notes referred to in it were signed in the name of the corporation by Louis J. LeMay, its president, being negotiable promissory notes payable to the order of plaintiff, and were delivered by the president of the defendant to plaintiff, who at the time delivered to the defendant—apparently delivery being made to its president—the letters patent covering the invention and also turned over to the officers of defendant the tools and machinery referred to in the agreement.

By a supplemental agreement of date December 21, 1907, to the effect that upon the payment upon the 15th of each succeeding month by defendant of ten cents for each dozen of washboards manufactured and sold by it during each month from November 1, 1907, to June 1, 1908 (it appearing that only six of the notes had been paid, some of the remaining eighteen being in default and defendant desiring an extension on all of the unpaid notes), the time of payment of all was extended to June 22, 1908, providing, however, that any sums paid in the meantime under the above provision for payment of what is practically a royalty, should be credited on the notes in the order of their maturity; it being stipulated that, with this exception, the agreement of March 22, 1907, should remain in full force. This agreement was signed by plaintiff, and in the name of the defendant by George Wegmann, its treasurer.

Among other notes which appear not to have been paid after the execution of this supplemental agreement was the last one, numbered twenty-four, for $100. This action was accordingly commenced on it before a justice of the peace, resulting in a judgment for plaintiff, whereupon defendant appealed to the circuit court and

the case was there tried before the court, a jury being waived. There were no pleadings in the case, the only papers filed before the justice as well as in the circuit court being the note itself and an affidavit of George Wegmann, as the treasurer of the company, in which it is set up that the words, "LeMay-Wegmann Brokerage Company per Louis J. LeMay, President," written and printed on the notes, were written and printed by Louis J. LeMay, then the president of the defendant company, and delivered to plaintiff by him; that LeMay never had any authority to sign or deliver the paper; that the execution and delivery of it was not authorized by the company; that the company never had any power under its charter to sign or deliver the paper or to transact the business, purchase or lease the property, or enter into the contract in consideration of which the paper was executed and delivered, and that the defendant corporation never signed, executed or delivered the paper.

At the trial the note was introduced in evidence over the objection of defendant, that it was beyond the scope of the authority of the company to make it, and it was not shown that the party who executed and delivered it had any authority from the corporation to do it. Defendant saved exception to the overruling of the objection. Plaintiff, testifying in his own behalf, identified the note and first agreement as having been signed by Louis J. LeMay and the supplemental agreement as having been signed by George Wegmann, he testifying that he had also signed the agreements and that the note in evidence was one of the notes referred to in it and was a part of the consideration for the contract. He further testified that he delivered the letters patent referred to and that they are still in the possession of defendant, although the legal title to them is still in him (plaintiff). He further testified that he knew these parties as officers of defendant, the one as president, the other as treasurer, and knew Henry Wegmann as manager, having charge of the men engaged in work at the offices or plant of the de-

fendant, and that he had turned over to defendant the tools and machinery referred to, and that they, along with the patents are still in the possession of defendant. At the suggestion of defendant's counsel, the agreements referred to were introduced in evidence as well as the articles of association of defendant. It was stipulated by counsel at the trial that washboards were bought, sold and handled by grocers and by brokers dealing through the grocer trade, and that brokers generally do not sell to the grocer trade the rights to manufacture washboards or patent rights; that they do not usually do that; that this is not one of the things which they usually do; that the only meeting the corporation ever held was the first meeting of the directors, and the meeting necessary to form a corporation and that they had held no other meeting since; that the corporation was composed of the three incorporators and that George Wegmann is the officer who has been making all the returns required by law to the Secretary of State. This is all the testimony in the case. At the conclusion, defendant asked various instructions which in the view we take of it are unnecessary to set out, they being to the effect that the plaintiff could not recover as the contract between plaintiff and defendant was ultra vires the corporation and was executory, and that it did not appear that the officers who had signed the notes and the contract were authorized by the directors or stockholders to do so. They were refused.

At the request of the defendant the court made a finding of facts which, in substance, after finding the incorporation of the defendant and reciting the purposes for which it was organized, found that the buying and selling of washboards was included within the purposes for which the corporation was organized; that on the 22d of March, 1907, plaintiff was the owner of the letters patent issued to him by the United States, giving him the exclusive right to make, use and sell the kind of washboards specified in the patents and that he was also at

that time the owner of certain machinery and tools
necessary or useful in the manufacture of washboards
under the patents; that the contract was entered into on
the consideration of the notes set out; that these notes
were executed by the then president of the corporation
and delivered to plaintiff, who thereupon delivered to de-
fendant the machinery and tools mentioned in the con-
tract; that thereupon the defendant company entered
upon the manufacture of washboards under the letters
patent, using the machinery and tools for the purpose;
that by the contract plaintiff reserved to himself the
legal title to the letters patent and property transferred
until such time as the entire purchase price, as evidenced
by the notes, had been paid, but that otherwise the sale
was a complete one so far as the plaintiff was concerned,
including the delivery and acceptance by defendant of
the letters patent and tools; that subsequently defendant
had paid 8 of the 24 notes given to plaintiff for the
purchase price but had refused to pay the remaining
sixteen notes, each for $100, and that this suit was for
the recovery of one of them; that the corporation con-
sisted of three stockholders, naming them as in the
articles, and that all of them were directors and officers
of the corporation; that the defendant still retains
possession of the machinery and tools delivered to it
under the contract and still has the use and benefit of the
exclusive right to make, use and sell washboards under
the letters patent transferred to it by the contract, and
that plaintiff had never elected to rescind the contract
for failure to pay the purchase price nor sought to re-
cover from the defendant either the property or the let-
ters patent assigned to defendant under the terms of the
contract. As his conclusion of law on these facts the
court held that the defense of ultra vires was not avail-
able to the defendant and rendered judgment in favor
of plaintiff, the learned trial judge concluding as follows:

"In the opinion of the court, to sustain a defense of
ultra vires on the foregoing facts, would permit a fraud

to be perpetrated on plaintiff which courts should not countenance.

"As stated in the case of Russell v. Cassidy, 108 Mo. App. 1. c. 580:

'The present action is upon a note of which prima facie and in absence of testimony to the opposite effect, defendant received the benefit and it would be inequitable and unjust to permit the defendant to question the power of the payee to accept the note from him. The maker of a note cannot defend an action on the note brought by a corporation or its privy on the ground that the corporation had no corporate power to take the note. Bank v. Gillilan, 72 Mo. 77, etc., etc.'

"In this case the maker of the note should not be permitted to defend an action on its note on the ground that it had no corporate power to make it.

"In the case of Seymour v. Spring Forest Com. Assoc., 144 N. Y. 333, the New York court states that: 'That kind of plunder which holds on to the property but pleads the doctrine of ultra vires against the obligation to pay for it, has no recognition or support in the law of this state.'

"In the opinion of the court, the rule announced in the New York Case is a good one to apply to the facts in the present case."

Following the finding of fact and conclusion of law, the court rendered judgment for plaintiff, and it appears by the record that defendant excepted to the "decree and judgment and the form thereof," and motions for new trial and in arrest were duly filed, overruled and exception saved. Whereupon defendant duly perfected appeal to this court, filing its bill of exceptions which had been duly signed by the trial judge.

As will be noticed, the defense rests entirely upon the plea of ultra vires. One of the earliest of the writers on the subject of ultra vires, Brice, in the 2 Am. Ed. (1880), edited and annotated by Green, sec. 4, pp. 783 and following, lays down as the true view of the relation

of corporations and creditors, when considering the doctrine of ultra vires as applied to the corporations themselves and to creditors and other third parties, that in the first place, if the act is ultra vires, a corporator may raise the objection, whether against a corporation or creditor or other contracting party, attempting to enforce such act or his alleged claims or rights resulting therefrom. But, secondly, if a corporator desires protection against the party who has thus dealt with the corporation, he must have been prompt and energetic in repudiating the transaction. "As he can be bound by acquiescence, so that if he do not quickly object, and give his objection vitality, the creditor will be jusified in assuming that he consents." Third, that a corporation "may refuse to carry out such a transaction; but after it has been completed, and probably even after it has been merely, though substantially, part performed, it is estopped from raising the objection." Continuing under this latter head, the author says (1. c. 784) : "But when a transaction of the kind now in consideration is complete on the part of the other contracting party, every principle of common sense and equity requires that the corporation should not be permitted to repudiate payment therefor, or the other due completion thereof by itself, on the ground that the transaction, though admitted to be within its possible capacities, is outside its actual powers then called into existence. The very defense discloses fraud; discloses what no court of equity has ever allowed a party to rely on, namely, his own laches or chicanery; discloses that the objector could have given, and can now give himself the capacity which he pretends to be without, and could have done that which, if done, would cut away the ground whereon his objection rests. It is submitted, therefore, that when such a transaction is completed, on one side, it is then too late for the corporation to attempt to wriggle out of that stipulated for on its side." Discussing the question as to whether the rule applies when the transaction has been only part-

ly performed and remarking that no decision is expressly in point, the author suggests that the solution depends upon the principle indicated, namely, "that if there has been 'substantial' part performance, such a course of conduct by the corporation, and such action by the other side as to show that both parties intended the due carrying out of the transaction, then it is too late for the corporation to object to the invalidity of the matter, and if it does so, it will be in exactly the same position as if it refused to carry out any other binding contract." The present view of the courts is to the same effect, the authorities on the matter being very fully compiled in 29 Am. and Eng. Ency. of Law (2 Ed.), under the title "Ultra Vires." There, at page 46, it is said that the ground upon which the defense of ultra vires is most generally included is that of estoppel; that the corporation or other party to the contract having received the fruits thereof should not be permitted to plead want of power in the corporation and thus escape liability and that, generally speaking, the rule of ultra vires prevails in full force only where the contracts of corporations remain wholly executory. As was held by our own Supreme Court, in First National Bank of Kansas City v. Guardian Trust Co., 187 Mo. 494, 86 S. W. 109, the defense of ultra vires should not, as a general rule prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong; that the defense is never sustained out of regard for a defendant, but only where an imperative rule of public policy requires it; that a contract merely in excess of the power granted to a private corporation, but which is not expressly forbidden either by its charter or the general statutory law, is binding on the company on the principle of estoppel, so that it cannot be avoided by the corporation as ultra vires without a return of the consideration received, if it has been fully performed by the one party and its consideration received by the corporation. In line with this decision of

our Supreme Court are the cases of Cass County v. Mercantile Town Mut. Ins. Co., 188 Mo. 1, 86 S. W. 237; Kansas City ex rel. v. Schroeder, 196 Mo. 281, 93 S. W. 405; Adams v. Farmers' Mut. Ins. Co., 115 Mo. App. 21, 90 S. W. 747.

In the Cass county case, supra, our Supreme Court, referring to the case of City of Goodland v. Bank, 74 Mo. App. 365, approves the statement found in that case, to the effect that the courts of our state have repeatedly declared that a violation of a charter cannot be taken advantage of collaterally or incidentally but only on a direct proceeding instituted for that purpose, and adds that it has further been declared by our courts that in a collateral proceeding to declare the ultra vires acts of a trading corporation void, it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain things, but in addition to declare that when it exceeds these restrictions, the act should be void. "If," says the court (l. c. 15), "such intention does not exist in the charter, the state alone can question such acts as ultra vires, except when the contract is against public policy or good morals."

Without going further into a discussion or citation of authorities, it is sufficient to say as to the case at bar, that it presents no merit whatever and is so obviously an attempt, under a plea of ultra vires, to perpetrate a fraud, that no court would twist a salutary rule underlying the doctrine of ultra vires into such a vicious use as to allow a defendant corporation to escape from liability on a contract of which it has enjoyed and still retains the benefits. It is in evidence that the corporation defendant is composed of but three stockholders; but three men are named as stockholders in the articles of incorporation, and while the record is silent as to whether any new parties have come in, the fact of ownership of the stock, once shown to exist, and nothing to the contrary appearing, carries the presumption that it still

exists. [Bank v. Trust Co., supra, l. c. 525.] The corporation or directors had but one meeting, yet have carried on business for over three years, in the active management of which every one of them participated. Yet counsel for defendant does not hesitate, at the trial, to object to the note, on the ground that it does not appear that the board met and authorized its execution. It is one of those very stockholders, himself an officer, who signed the contract extending time of payment of the notes, who ventures to set up, by affidavit, the want of power to do what he did. If he had no authority from his company to sign this supplemental agreement and on the faith of it obtained an extension of time of payment of the notes, he committed a fraud. We absolve this treasurer from any such charge, for beyond all question his act was valid and within his authority, as was the act of the president in signing the note. All the stockholders, all the directors, every officer, were privy to the whole transaction, two of them active agents in it. His zeal should not have led the treasurer into signing the affidavit.

Even if the transaction be considered a conditional sale on the part of plaintiff, the right of defendant, in such case, to become the absolute owner of the patents and of the tools became absolute upon compliance upon its part with the terms of the contract. These are rights of which no act of plaintiff could divest it and which, in the absence of any stipulation in the contract restraining it, defendant could transfer by sale or mortgage; upon the performance of the condition of the sale, the title to the property would vest in the vendee, or in the event that he has sold or mortgaged it, in his vendee or mortgagee, without further bill of sale; vests so completely that he could maintain replevin to recover possession. [Williston on Sales, sec. 331, citing and quoting Carpenter v. Scott, 13 R. I. 477, l. c. 479.]

It may be that by electing to sue on the notes, plaintiff would cut himself off from any right to recover either the letters patent, tools or machinery; upon this we express no opinion, as it involves a view of the contract not presented to us nor to the learned trial court. At all events, the plaintiff, upon his part, has fully performed the contract, so far as the real consideration of these notes was concerned; that is, he has turned over to defendant corporation the sole and exclusive right of sale of washboards under his letters patent. Undoubtedly the right to sell washboards is within the corporate right of the defendant company; and defendant had that exclusive right by virtue of the contract ever since that right was granted to it by the contract, which, until assignment of the letters patent, constituted defendant sole licensee to sell the patented articles. That defendant could not itself manufacture them would not impair its right to their exclusive sale.

We hold that there has been such a complete compliance with this contract on the part of plaintiff that this defendant, represented as it was in the whole transaction by all of its stockholders and all of its officers and all of its directors, and having enjoyed all the benefits thereof, cannot at this late day, and for the first time, when called on to pay, claim lack of corporate authority to enter into the contract. Such a defense in such a case is so redolent of fraud that it will not be tolerated. The defense in this case is so flimsy and the appeal so lacking in merit, that if we had been asked to impose the statutory penalty for prosecuting a vexatious appeal, we would have been very much inclined to do so.

The judgment of the circuit court is affirmed. *Norloni* and *Caulfield, JJ.,* concur.