**FARMERS & MERCHANTS BANK OF ST. CLAIR, a Corporation (Plaintiff), Appellant,**

v.

**BURNS & HOOD MOTOR COMPANY, a Corporation (Defendant), Respondent.**

No. 29476.

St. Louis Court of Appeals.

Missouri.

Nov. 7, 1956.

Theodore P. Hukriede, Washington, for appellant.

Robert L. Borberg, Union, for respondent.

MATTHES, Judge.

In this jury-waived action upon a promissory note the court found for defendant. From the judgment so rendered plaintiff has appealed, contending that the testimony

offered and evidence produced by the defendant constituted no defense to the action, and that judgment should have been rendered for the balance due on the note. Defendant has not favored this court with a brief.

The facts and circumstances giving rise to the controversy grew out of the execution of a promissory note on October 30, 1951, in the principal sum of $400, payable to order of plaintiff in equal installments of $100 each, one, two, three, and four years after date. The note bears interest from date at the rate of two per cent per annum, and provides that in the event the note is placed in the hands of an attorney for collection, the maker thereof will be paid an attorney's fee of ten per cent of the principal and interest thereon remaining unpaid. The instrument was signed, "Burns & Hood Motor Co. By Robt. E. Hood, Pres." In the articles of incorporation of defendant company, which were made a part of the certificate of incorporation issued by the Secretary of the State of Missouri, the defendant was given power, inter alia, "to promote, finance and aid by loan, subsidy or otherwise, any company or partnership or individual for any purposes which may seem directly or indirectly calculated to benefit the corporation" (defendant); and to borrow money and contract debts without limit as to amount, and to issue its notes or other obligations or evidence of indebtedness for any amount so borrowed.

The St. Clair Development Association (for sake of brevity referred to as Association) was incorporated in 1947 or 1948 for the purpose of inducing industries to locate in St. Clair, Missouri. To carry out its prime object of attracting business enterprises, the Association had authority to purchase land and erect buildings. A campaign was inaugurated by the Association to raise funds, and in connection therewith a plan was evolved whereby the Association agreed to and did issue stock certificates to natural or artificial persons who contributed to the fund. Testifying for plaintiff, Mr. Hood stated that other automobile dealers having their places of business in Union, Missouri, had subscribed $500 each to the fund. Feeling that defendant should follow this pattern, Hood discussed the subject with Mr. Stephen T. Burns, who was the principal stockholder as well as the vice-president and treasurer of the company. Although the board of directors did not formally authorize the subscription of $500 or the execution of the note sued upon, Mr. Burns agreed, according to Hood, that defendant should make the pledge, and was fully cognizant that the note would be executed. Instead of paying the $500 in cash, the defendant executed the note aforesaid for $400, and on November 20, 1951, defendant issued its check to the Association for $100. The full amount of the note was paid by the plaintiff herein to the Association, thus satisfying the subscription pledge of the defendant in so far as the Association was concerned. Some time subsequent to the execution of the note and the payment of the $100, the Association issued its Certificate No. 181 to defendant for twenty shares of stock. This certificate contained the following language:

"This certifies that Burns & Hood Motor Co., has subscribed the sum of Five Hundred ................... Dollars toward the fund for the purpose of erecting a building to be used to attract and to house new industry within the City of St. Clair, Missouri. Of this sum, One Hundred Dollars has been paid by the Subscriber, and the remaining four-fifths paid by the Farmers & Merchants Bank of St. Clair, secured by this Subscriber's note."

The certificate was delivered to Mr. Hood, who placed it in the files of the defendant in its office at Union, Missouri. It remained in defendant's possession to the date of the trial, and was produced in court by defendant's lawyer. At no time did the defendant tender the certificate to plaintiff or disclaim ownership thereof. There was no question raised concerning the transaction until February of 1954. To

the contrary, on October 25, 1952, the defendant paid the first installment due on the note which amounted to $108, $100 thereof being the principal installment, and $8 being interest for one year.

A change was made in the management of the defendant company, and Mr. Hood was relieved as general manager and president by Jay T. Matthews on July 14, 1953. He immediately familiarized himself with the accounts and holdings of the company, and found the stock certificate listed as an asset under a journal entry styled, "Accounts and negotiable securities". He also became aware of the existence of the note as is fully demonstrated by the letter he wrote to plaintiff, of which the following is a copy:

"October 24, 1953
"Farmers & Merchants Bank, St. Clair, Missouri, Att: Mr. Casey: Dear Mr. Casey: I have received a notice in the mail this month of a $100.00 note being due plus interest on the St. Clair Improvement Association Bond in the amount of $500.00, which is twenty shares and it is my understanding that $200 has been paid on this already.

"Due to the fact of change of management of the corporation and reorganization of business here, I find that the company is unable to extend any more money towards payment on this bond as we are tightening up in every department in our business to come through the year with a profit. I think you realize that no other business has been hit so hard as the automobile business.

"I would appreciate it very much if you could have them to issue us the amount of shares that the $200.00 would have purchased and probably sell the remainder $300.00 to someone as we just absolutely cannot afford to pay it now.

"It is not that we are taking a negative attitude towards St. Clair or any of our business associates there, for we would be the first to realize the loss of the trade in which we service. Trusting that this can be done and hoping that it doesn't inconvenience you, I remain,

"Respectfully yours,

/S/ J. T. Matthews
By D. H.
Burns & Hood Motor Co.
J. T. Matthews, Pres."

Following this action plaintiff employed lawyers to collect the balance of $300. To the demand made by them the defendant, by letter dated February 2, 1954, advised that, "We must take the view point that Robert E. Hood, then president of Burns & Hood Motor Co., did not have the expressed authority of Burns & Hood Motor Co., a corporation, by virtue of this being recorded in the minutes of the annual meeting of the board of directors", and refused payment. Thereafter a suit was filed in the Magistrate Court of Franklin County, and on application of defendant venue was transferred to the circuit court of the same county.

In the trial court the defendant contended that in the absence of formal action by the board of directors of defendant expressly authorizing its execution by Robert E. Hood, the note did not constitute a valid and binding obligation. In this connection it should be said that one of the by-laws of defendant provided that all notes and contracts and other obligations of the corporation should be executed by such officer or person as the board may designate. Apparently the trial judge was of the opinion that the failure of the board to adhere to requirements of the by-law proved fatal to plaintiff's case.

This action having been tried without a jury, we are charged with the duty of reviewing the case not only as to the law, but also upon the evidence. Section 510.-310 RSMo 1949, V.A.M.S.; Fulton v. City of Lockwood, Mo.Sup., 269 S.W.2d 1; Atkinson v. Smothers, Mo.App., 291 S.W. 2d 645. There is slight disagreement or

dispute, if any, as to the material and essential facts. In this situation our task is simply to determine the legal effect of the actions of the defendant's officers with respect to the transaction under scrutiny.

■ Although the instant note was concededly executed by the president of defendant company, in the absence of express authority from the board of directors, and therefore contrary to the provisions of the applicable by-law, we must nevertheless hold that the note constitutes a binding obligation. This follows because the law is well settled that where, as here, a corporation with knowledge of the act has ratified it, or has accepted the consideration of the note, it will be as much bound as if the note had been originally executed in exact conformity with the provisions of its by-laws. Parsons v. Guarantee Inv. Co., 64 Mo.App. 32, loc. cit. 35, and cases cited; Magnolia Compress & Warehouse Co. v. St. Louis Cash Register Co., 201 Mo.App. 201, 210 S.W. 125; Johnson v. Farmers' & Merchants' Bank, Mo.App., 287 S.W. 835; Jones v. Montieth, Mo.App., 34 S.W.2d 1014; Osmer v. LeMay-Wegmann Brokerage Co., 155 Mo.App. 211, 134 S.W. 65; Minnesota Mut. Life Ins. Co. v. Manthei, Mo.App., 189 S.W.2d 144; Rubenstein v. Nourse, 10 Cir., 70 F.2d 482, loc. cit. 485.

■ The facts herein bring this case within the ratification rule. The twenty shares of stock issued by the Association, which constituted sufficient consideration for the note, were not only accepted but were retained by the defendant. When the first installment on the note became due and payable, no effort was made to repudiate the transaction. To the contrary, defendant paid $108, which was the amount of the principal and interest then due. While the record reveals there was a dispute as to whether other officers and members of the board of directors had actual knowledge of the giving of the note at the time of its execution, it is clear that in July, 1953, information came to the then president with respect to the stock transaction. At that time Mr. Matthews, who had replaced Mr. Hood as president, familiarized himself with the company's business. He ascertained that the stock certificate was carried as an asset of the company. In October, 1953, when the second installment under the terms of the note became due, Matthews made no attempt to question the authority of the former president to bind the company through the medium of the note, but rather stated that economic conditions placed defendant in a position of not being able to pay the balance of the note. It was not until February 2, 1954, that defendant advised the attorneys who had been retained by plaintiff that, "We must take the view point that Robert E. Hood, then president of Burns & Hood Motor Co., did not have the expressed authority of Burns & Hood Motor Co., a corporation, by virtue of this being recorded in the minutes of the annual meeting of the board of directors." But even at that late date no effort was made to return the consideration for the note, indeed, so far as the record discloses, the shares of stock are still retained by the defendant. Having ratified the transaction, the defendant is bound by the note.

The judgment is reversed and the cause is remanded with directions to render judgment for the plaintiff for the balance due on principal of note of $300, with interest thereon from October 30, 1952, at two per cent per annum, compounded annually, plus ten per cent of the principal and interest as an attorney's fee.

It is so ordered.

ANDERSON, P. J., and RUDDY, J., concur.